Emilie W. Peacock et al., Appellants, v. Charles H. Feltman et al., Appellees.

Gen. No. 30, 934.

1. LANDLORD AND TENANT—*what constitutes a waiver of grounds for forfeiture.* The technical breach of a lease by reorganizing the lessee corporation without lessor's written consent to sublet was waived by lessor's continuing to receive rent with full knowledge of the alleged breach for 77 months thereafter, when lessee's threat of a damage suit was followed by the instant action for forcible detainer.

2. LANDLORD AND TENANT—*when clause against waiver of breach not available.* In an action for forcible detainer based on breach of a lease providing for no subletting without the lessor's consent, the lease clause that the receipt of rent should not constitute waiver of any breach did not prevent a waiver of forfeiture from the receipt of rent for 77 months after a sublease, with full knowledge of the facts.

3. LANDLORD AND TENANT—*how provisions for forfeiture construed.* A forfeiture covenant of a lease, that subletting without lessor's written consent breaches the lease, is to be construed strictly so as not to extend beyond the express stipulation.

4. LANDLORD AND TENANT—*incorporation of department of lessee's business as a subletting.* In a lessor's action for forcible detainer based on the alleged breach of a lease by subletting without written consent, the nominal use of the building by a corporation which is really only an incorporation of a department of the lessee's business, for convenience in cost accounting does not constitute such a subletting as to constitute a breach.

Appeal by plaintiffs from the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1926. Affirmed. Opinion filed February 1, 1927. Rehearing denied February 28, 1927.

BUTLER, LAMB, FOSTER & POPE, for appellants; BEVERLY. B. VEDDER and ALLAN J. CARTER, of counsel.

WILSON, McILVAINE, HALE & TEMPLETON, for appellees.

MR. JUSTICE FITCH delivered the opinion of the court. This appeal is from a finding and judgment for defendants in a forcible detainer proceeding, brought to recover possession of the building known as No. 118 South State Street, Chicago, because of alleged violations of the covenants in the lease.

The lease was made in 1917. By its terms, Augusta Lehmann (plaintiffs' mother, who died in 1918) leased the building to The Curme-Feltman Shoe Company, an Indiana corporation, Arthur H. Curme and Charles H. Feltman, for 15 years from January 1, 1918, "to be occupied for shoe store and general mercantile pur-

poses''; and the lessees covenanted and agreed ''that said premises shall not * * * be occupied in whole or in part by any other person, and will not sublet the same, nor any part thereof, nor assign this lease, without in each case the written consent of the party of the first part first had.'' The lessees took possession of the building soon after the lease was executed, and ever since that time the building has been continuously occupied for the purposes mentioned in the lease and the stipulated rental of $3,000 a month was regularly paid to the lessors by the occupants thereof, until December, 1925, when a statutory ten days' notice to quit was served on defendants specifying the following default, viz: ''In having sublet the premises, having assigned the lease, and having permitted the premises to be occupied by persons other than the lessees.'' No other ground of forfeiture is claimed.

When the lease was made in 1917, the Indiana corporation, named in it as one of the three lessees, owned and operated eight retail shoe stores, two of which were located in Chicago and six in other cities. Curme and Feltman, the other two lessees named in the lease, were the president and secretary, respectively, of that corporation, who owned all but a few shares of its capital stock. In May, 1919, that corporation was dissolved and a new one formed under the laws of Delaware, with a much larger capital, called ''The Feltman & Curme Shoe Stores Company,'' which, in exchange for all its capital stock, acquired all the property and assumed all the liabilities of the Indiana corporation. The defendant Curme was elected president of the new corporation, and the defendant Feltman was elected general manager, secretary and treasurer. All of its common stock, all of the second preferred stock, and a majority of its first preferred stock was issued to them, and the remainder ($275,000) of its first preferred stock was sold to two other persons to provide additional working capital for the business. Feltman and

Curme retained full control of the new corporation, and the shoe business theretofore conducted at 118 South State Street was carried on thereafter by the same individuals as before but the name of the new corporation was placed on the front of the store, and the corporate name of the Delaware corporation was used thereafter in its business transactions and in all its letters to the "Estate of E. J. Lehmann," which appears to have been the name used by the lessors in their transactions with the lessees subsequent to the time when the estate of Mrs. Augusta Lehmann was closed in the probate court.

While this reorganization was being effected, Feltman and Curme went together to the office of the E. J. Lehmann Estate to obtain the lessors' written consent to an assignment of the lease to the new corporation. There they met Mr. Behr, the manager, and Mr. Praesent, then the assistant manager and afterward the manager, of the "Estate." The testimony of these four witnesses as to what was said on that occasion is conflicting. That of Feltman and Curme is to the effect that they explained the reorganization to Mr. Praesent and told him their attorney had asked them to get the lessors' written consent to transfer the lease; that Praesent said it was "not necessary at all," since they remained in control and "it was practically the same concern," and to "go right along as before," and they testified that because of what Praesent said at that time, no formal assignment of the lease from the old to the new corporation was ever executed. The testimony of Behr and Praesent as to that interview is to the effect that the request of Feltman and Curme was referred to E. J. Lehmann and refused by him two days later. Which version of this conversation is correct is immaterial, beyond the admitted facts that such a request was made; that the reorganization was mentioned and that no written consent of the lessors was secured.

For the purposes of this case, it may be conceded that the use and occupation by the Delaware corporation at any time thereafter "without the written consent of the lessors first had" was, prima facie, a technical breach of the covenants of the lease, and this prima facie showing forms the basis of one of plaintiffs' claims.

As to this alleged breach, however, the record shows that, for 77 consecutive months after the breach occurred, the Delaware corporation each month sent its check for $3,000 to the Lehmann Estate for the rent due under the lease, and that from October, 1919, to October, 1925, the plaintiffs, with full knowledge of the breach, accepted such checks and caused the Lehmann Estate to give its receipts to the Delaware corporation, *by name,* for such payments as rent of the building in question. There is also other documentary evidence tending to prove that plaintiffs knew that the Delaware corporation was in possession of the leased premises, claiming to be a tenant, during all that time, and there is no evidence fairly tending to prove the contrary. It also appears from the evidence that, notwithstanding plaintiffs were fully aware of this technical breach, the first objection made by anyone on their behalf to the continued occupancy by the Delaware corporation as their tenant was made soon after two letters had been written by defendants' attorney to the plaintiffs, complaining of the alleged negligent manner in which plaintiffs were "shoring up" the building occupied by defendants to provide for the construction of an adjoining building. The date of the notice to quit is four days after the date of the second of such letters, which threatened "injunctional proceedings" and hinted at a suit for damages.

Upon consideration of these facts, we think the trial court did not err in finding therefrom that the technical breach shown was waived by the plaintiffs, and that by

their own conduct they were estopped from asserting that breach as a ground of forfeiture.

It is urged that the defense of waiver is not available to defendants because the eighth clause of the lease so provides. The pertinent part of that clause is as follows: "Nor shall the receipt of said rent or any part thereof or any other act in apparent affirmance of the tenancy operate as a waiver of the right to forfeit this lease and the term thereby granted for the period still unexpired for any breach of any of the covenants herein." This language is not free from ambiguity. It may have been intended only to cover the receipt of instalments of rent accruing during the pendency of a suit for possession, as in *Palmer v. City Livery Co.,* 98 Wis. 33, and *Granite Bldg. Corp. v. Greene,* 25 R. I. 586, both of which are referred to in *Vintaloro v. Pappas,* 310 Ill. 115, 117; or it may refer to the inadvertent receipt of rent after a breach has occurred, before the lessor has knowledge of the breach. It does not say, and we think it does not mean, that the repeated and long continued acceptance of rents, after a breach has occurred, with full knowledge of such breach, shall not operate as a waiver of the right of forfeiture based upon such breach. At all events, counsel have cited no case, and we know of none, in which such a clause in a lease has prevented the operation of the usual rule, expressed as follows in *Webster v. Nichols,* 104 Ill. 160, 172: "Any act done by a landlord knowing of a cause of forfeiture by his tenant, affirming the existence of the lease, and recognizing the lessee as his tenant, is a waiver of such forfeiture. (1 Williams' Saunders, 287; 2 Platt on Leases, 471; 1 Washburn on Real Property, 454.) The receipt of rent subsequently accruing from the tenant by the landlord is such an act, and the forfeiture thereby waived." (Citing authorities.) The language so used in stating the rule is quoted from the case of *Ireland v. Nichols,* 46 N. Y. 413, 416. In that case the

opinion shows that it was contended that where there was a subletting of a portion of the premises without the written consent of the lessor, as required by the lease, there was a continuing cause of forfeiture, so long as the occupancy under the subletting continued; but the court held that the subletting was not continuous but was a distinct act occurring when the sublease was made; that when the sublessees entered into possession under it, the forfeiture was complete; and that when this right was waived by receiving rent subsequently accruing, with knowledge of the forfeiture, "the right founded upon the subletting or the occupancy, in pursuance thereof, was gone." We are therefore of the opinion that the defense of waiver was available to defendants in this case, notwithstanding the eighth clause of the lease.

When plaintiffs' case was closed, this was the only breach shown or claimed by them. Upon cross-examination of the defendants Feltman and Curme, however, it developed that in the summer of 1925 they had organized another Delaware corporation called "Feltman & Curme, Incorporated," the specified object of which was "to sell shoes at retail," which corporation, at the time the notice to quit was served, had several thousand pairs of shoes and some hosiery in the leased building. They testified, in substance, that the new corporation was in fact the mail order department of the business of The Feltman & Curme Shoe Stores Company; that it handled that company's mail orders and door-to-door canvassing; that it was formed for the purpose of keeping a separate account of that part of the business of that company, in order, as Curme testified, "to determine how much profit or loss we had from that department as compared with other departments of our business"; that it was "solely a matter of bookkeeping and accounting"; that the Shoe Stores Company owned all the capital stock of Feltman & Curme, Incorporated; that Curme was its president

and Feltman its treasurer; that its shoes were handled by the employees "engaged in other work at the store," who were hired and paid by the Shoe Stores Company; that one Cramer "was the sales manager for the new corporation," and he was hired and paid by the Shoe Stores Company.

This, in substance, is all the evidence in the record regarding "Feltman & Curme, Incorporated." It was all brought out by the plaintiffs and they did not attempt to contradict it. They now rely on it as "clear proof" that a second ground of forfeiture existed when the notice to quit was served. They contend that this evidence shows that a separate legal entity, a "person other than the lessee," was permitted to occupy a part of the leased premises and that such occupancy, "without the written consent of the lessor first had," was a clear violation of the covenant of the lease.

Covenants of this character in a lease are not favorably regarded by the courts and are construed liberally in favor of the lessees, and so as to prevent the restriction from extending beyond the express stipulation. Forfeitures are not favored in law, and conditions are taken strictly, because they divest estates. (*Boyd v. Fraternity Hall Ass'n*, 16 Ill. App. 574, 576; *Postal Telegraph-Cable Co. v. Western U. Tel. Co.*, 155 Ill. 335, 348.) The words of the covenant, "that said premises shall not be occupied in whole or in part by any other person," must be given a reasonable construction. They cannot be held to include "persons," whether natural or artificial, whose use, possession or occupancy of the leased premises was that only of the lessees themselves. Such, in effect, was the character of the occupancy of Feltman & Curme, Incorporated. That corporation was a part of the lessees' business organization, and such possession as it had of any part of the leased premises consisted of such space as was required from time to time to enable the employees of the Shoe Stores Company to pack and ship to cus-

tomers of the latter such shoes as were ordered by mail or from canvassers. Its so-called "occupancy" of the premises was therefore the occupancy of the Shoe Stores Company—a mere system devised by it for purely cost-accounting purposes. We are clearly of the opinion that the evidence as to Feltman & Curme, Incorporated, is not sufficient to sustain the claim of the plaintiffs or support a judgment of forcible detainer against defendants.

These conclusions make it unnecessary for us to decide other propositions argued by counsel.

For the reasons stated, the judgment is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.