DOMINICK GALLUZZO ET AL. *vs.* ANTONIO MANNINO ET AL.

Third Judicial District, Bridgeport, October Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued November 6th, 1929—decided January 6th, 1930.

*James C. Shannon,* for the appellants (defendants).

*Lawrence S. Finklestone,* for the appellees (plaintiffs).

HAINES, J. There is no dispute as to the facts upon this appeal. The defendant Antonio Mannino had for some years conducted a business in real estate, insurance, loans, steamship and foreign exchange, musical instruments, the local agency for the Il Progresso Italo-American Newspaper, and a United States sub-Post Office branch, upon property owned by him in Bridgeport. On or about May 1st, 1926, he sold the business to the plaintiffs for $1,800, exclusive of the real estate and loan business which he retained for himself. At that time he also agreed not to become interested in any similar line of business to that so sold, for a period of seven years, for which period he gave a lease of the store in which the business was

situated, to the plaintiffs. The leased property consisted of the store and two rooms in the rear together with the cellar underneath the same, and the lease contained the following provision: "If said lessees shall assign this lease, or underlet, or otherwise dispose of the whole or any part of said premises, or use the same for any purpose but that herein before authorized . . . then this lease shall thereupon terminate."

The plaintiffs took possession of the leased property and have very considerably increased the business, and also engaged in the real estate and insurance business. In July, 1926, the plaintiffs and the defendant Antonio discussed the formation of a small loan corporation under a charter to be obtained from the banking department of the State in accordance with the statute. The plan was that the plaintiffs and Antonio would organize the corporation, together with such of their friends as they might interest, and that the business of the corporation should be conducted in the leased premises in conjunction with the business of the plaintiffs therein. Before the organization had taken place, however, defendant Antonio withdrew, but made no objection to the completion of the organization of the corporation, nor to the establishment of its business in the leased premises. The plaintiffs relied upon the defendant Antonio's assent to the plan and that they would carry on the business of the corporation in the leased premises, and it was not actually known until the date of the incorporation, whether the defendant Antonio would join the plaintiffs in the enterprise. The incorporation took place and the name of "The Etna Loan Company" was adopted. The leased premises were known as No. 732 East Main Street and this was designated as the principal office of the corporation. The certificate of incorporation was approved and the first loan was made

September 4th, 1926. The capital of the corporation is now $40,000 and it has, in addition, a considerable surplus and reserve fund to cover contingent liabilities and bad accounts. It has paid its stockholders ten per cent cash dividends upon its outstanding stock since its inception. The plaintiffs control more than fifty per cent of the outstanding stock and the balance is owned by their friends. The corporation has, in the leased premises, only a desk and a dozen chairs, and it holds its weekly meetings in the rear room of the store, and this desk and these chairs are used by the plaintiffs in connection with their business. There is no particular portion or part of the premises which the loan corporation uses or occupies. A large percentage of the loans made by the corporation are made to customers of the plaintiffs to assist the former in paying for merchandise bought of the plaintiffs, and such arrangements are of material assistance to the plaintiffs in the conduct of their general business. The business of the corporation has been conducted in the same place from its organization, and it has continued to occupy the premises as above stated with the knowledge and acquiescence of the defendant Antonio, who continued to accept the rent for the premises during his entire ownership, with full knowledge of the uses to which the premises were being put and with his consent. After the lease was made Antonio did some business in loans, real estate and insurance at his home, and then applied for and received desk room in the store leased to the plaintiffs, and continued to do business there, paying $11 per month to the plaintiffs for rent and services rendered. While he so occupied the premises with the plaintiffs, the loan corporation continued to do business there, and Antonio inquired from time to time as to its condition, the amount of loans outstanding, and the profits of the business. He

was present when loans were applied for and made, and in general, consented to the use of the premises by the loan corporation, and was also present when the windows were being lettered "Etna Loan Corporation."

Sometime before December 1st, 1926, Antonio had a dispute with the plaintiffs and left the store, and soon after attempted, unsuccessfully, to buy the plaintiffs' business. On the 30th of November, 1926, he conveyed the title of the property to his wife, the defendant Raffaele. In February, 1927, these two defendants organized the Washington Loan Company, which he has ever since conducted in the same building but not in the leased rooms occupied by the Etna Loan Corporation. In April, 1928, Antonio, purporting to act for his wife but in reality acting for himself, objected for the first time to the use of the leased property by the Etna Loan Corporation, and refused to accept rent checks for May, June, July and August of that year, but later accepted and cashed these checks. Before doing so, the defendants demanded an increased rental for the leased property, of $10 per month, because of the use of the leased premises by the loan corporation. This, the plaintiffs have at all times refused to pay. On August 10th, 1928, the defendant Raffaele, by her attorney, served written notice upon the plaintiffs, that after September 1st, 1928, the plaintiffs must comply with the provisions of the lease, and that any further violation would be regarded by the defendants as a forfeiture of all the plaintiffs' rights under the lease. On September 13th, 1928, she caused to be served upon the plaintiffs, a notice to quit the premises on or before September 25th, 1928. This action was begun in order to force the plaintiffs to pay an increased rental. The plaintiffs refused to leave the premises, and on November 21st, 1928, the defendants brought an action of sum-

mary process seeking to recover possession of the premises. The plaintiffs and their associates have spent a considerable sum to organize and establish the loan company and to build up its business at this location, and these commitments will be lost, together with a valuable good will, if a forfeiture is declared. The corporate business cannot be removed from these premises to another location without application to, a hearing before, and the consent of, the bank commissioner, and it is impossible to say whether this can be obtained. The leased premises are in identically the same condition as when first leased to the plaintiffs and no alterations or improvements of any kind have been made during their occupancy.

Upon this state of facts the trial court held that in subletting to Antonio there had been "a breach of the covenant of the lease not to sublet," and that the occupation by the loan company was also "a breach of the covenant of the lease not to sublet or use for an unauthorized purpose." The conclusion was reached, however, that by their conduct, under the circumstances set forth in the finding, the defendants had waived the ·breaches and are now estopped to claim a forfeiture for these causes.

The contention of the defendants was and is that although they had waived the breach prior to the notice, yet that, after the service of the notice requiring a compliance with the terms of the lease, they could thereafter insist upon a strict compliance, and that they were not estopped by their conduct to enforce forfeiture. These claims were overruled by the court and by this appeal are now presented to this court for review.

.It is to be borne in mind that the Etna Loan Corporation is not a party to this litigation. There is no issue apparent in the case which involves the rights or

liabilities of the corporation as such. The issues are between the plaintiffs and the defendants. The present action is an attempt to prevent the defendants from evicting the plaintiffs, and the ground upon which the eviction is sought by the defendants is that these plaintiffs have violated the terms of their lease by operating the loan business in the premises in connection with their general business. The rental of quarters to the defendant Antonio himself was a violation of the covenant against subletting, but it was waived, as the trial court finds.

There is no finding whatever in this record that the plaintiffs ever sublet or assigned any part of these leased premises to the loan company.

The burden of proving that there was a subletting or assignment is upon the party asserting it, which in this case is the defendant landlord; and where the facts are in dispute and conflicting inferences may be drawn therefrom, the question whether there was a tenancy is one of fact for the jury. *Garber* v. *Goldstein,* 92 Conn. 226, 102 Atl. 605; *Branch* v. *Doane,* 17 Conn. 402; *Ford Motor Co.* v. *Hotel Woodward Co.,* 271 Fed. 625.

Moreover, a covenant not to sublet, being a covenant against alienation, is not favored, and will be strictly construed against the landlord. *Millers Mutual Casualty Co.* v. *Insurance Exchange Building Corporation,* 218 Ill. App. 12; *Hilsendegen* v. *Hartz Clothing Co.,* 165 Mich. 255, 258, 130 N. W. 646; *White* v. *Huber Drug Co.,* 190 Mich. 212, 157 N. W. 60; *Presby* v. *Benjamin,* 169 N. Y. 377, 62 N. E. 430; *Mullins* v. *Nordlow,* 170 Ky. 169, 181, 185 S. W. 825; *In re Prudential Lithograph Co., Inc.,* 270 Fed. 469; *Christ* v. *Rake,* 287 Ill. 619, 122 N. E. 854.

The facts of record point to but one conclusion, that the use of the premises by the loan company was

merely by permission of the plaintiffs-lessees, and being nothing more than a mere license, such action on the part of the lessees was not a violation of the covenant against subletting. *Albiani* v. *Evening Traveler Co.,* 220 Mass. 20, 107 N. E. 406; *Lowell* v. *Strahan,* 145 Mass. 1, 12 N. E. 401; *Harrelson* v. *Miller & Lux, Inc.,* 182 Cal. 408, 188 Pac. 800; *Presby* v. *Benjamin,* and *Mullins* v. *Nordlow, supra.*

If a lessee permits a third party to occupy the premises with him, and no evidence of a lease is furnished, there is no violation by the lessee of the covenant against subletting. *Boyd* v. *Fraternity Hall Asso.,* 16 Ill. App. 574; *Roosevelt* v. *Hopkins,* 33 N. Y. 81; *Hargrave* v. *King,* 40 N. C. 430.

Where an individual, a lessee, gave the right to a corporation to occupy the premises with him and conduct a business in connection with the lessee's own business, it was held there was a presumption that the corporation was a mere licensee. *Galligan & Co., Inc.* v. *P. S. M., Inc.,* 116 Misc. 754, 757, 191 N. Y. Supp. 523.

Since it does not appear there was a subletting to the loan company, we next consider whether there was an "unauthorized use" of the premises by the lessees in permitting the loan company to operate there in connection with their own business.

Turning first to the notice, from the time of which the defendants date their claim, we find it is addressed to the plaintiffs as "lessees as appears by record under a lease dated April 3, 1926," and proceeds, "now notify you that on and after *said date* you must not violate the covenant in said lease prohibiting the assignment of said lease or under-letting, or otherwise disposing of the whole or any part of the premises or the using of the same for any purposes other than as set out in said lease without my written

consent. And any violation of said covenant on or after said date will be regarded by me as a forfeiture of all your rights under said lease as set forth in said lease."

We turn now to the lease itself to ascertain if possible what is meant by the expression in the notice, "purposes other than as set out in said lease." That lease contains absolutely nothing as to what use shall or shall not be made of the premises by the lessees. Toward the end, where provision is made for termination of the lease, we read, that if the lessees of the property shall "use the same for any purpose but that *hereinbefore* authorized," the lease may be terminated. This becomes meaningless, since the purpose had not in any way been "hereinbefore" specified or referred to. On the contrary, it is clear from a careful reading of the lease that it nowhere restricts the lessees to any particular specified use of the premises. It follows of necessity that a breach of covenant against unauthorized use by these lessees has not been established, and we cannot sustain the finding of the trial court on this point. The subletting to Antonio was not a breach of which the defendants can now take advantage, because of waiver and because in a court of equity a man may not take advantage of his own wrong. Since this is the only breach established by this record, these plaintiffs are entitled to judgment.

It becomes unnecessary to discuss the claimed error of the trial court in holding that there was a waiver and an estoppel, but we may add that based upon the premise that there had been a breach, the conclusion of the court that it had been waived, and that defendants were estopped, was a correct one, well supported by the authorities.

There is no error.

In this opinion the other judges concurred.