Edward W. CLASEN, and Southtown Professional Pharmacy, Inc., a Corporation, Plaintiffs-Appellants-Respondents,

v.

MOORE BROTHERS REALTY COMPANY, Inc., Defendant-Respondent-Appellant.

Nos. 32395 & 32396.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1967.

Motions for Rehearing or to Transfer to Supreme Court Denied March 17, 1967.

Application to Transfer Denied May 8, 1967.

Edward C. Schneider, Harry A. Frank, Milton F. Napier, St. Louis, for plaintiffs-appellants.

Ackerman, Schiller & Schwartz, Clayton, for defendant-respondent.

BRADY, Commissioner.

Cross appeals arising from an action for declaratory judgment as to the rights and duties of the parties to a ten-year lease of certain real estate in the City of St. Louis, Missouri. We will refer to the parties by their general designation in the trial court except that the individual plaintiff will sometimes be referred to by his name and the corporate plaintiff as such. Specifically, plaintiffs seek to avoid the percentage rental called for under the lease and request a declaration that Southtown Professional Pharmacy, Inc. is the lessee. Defendant seeks cancellation of the lease and the payment of certain disputed rentals.

Defendant owns a medical office building called "St. Louis Hills Medical Center". It entered into a lease with plaintiff Edward Clasen for space on the ground floor of that building to be used as a drug store. The provisions covering rental, forfeiture for non-payment of rent and for assignment or subletting of the leased premises read as follows: "For and during the term commencing thirty days after building is ready for occupancy and ending ten years thereafter, at the yearly rental of $6,400.00 payable in monthly installments of $533.33 each, plus 8% of the gross sales of said drug store business over annual gross sales of $80,000.00; rent payable $533.33 on the 1st day of each month and at the end of each twelve month period the gross sales for said 12 months will be determined and the balance of the rent paid within thirty days of the expiration of each twelve month period." This provision of the lease also provided: "In computing gross sales under the aforementioned provisions, cost sales to doctors and nurses shall be excluded therefrom." In referring to "annual gross sales" in this opinion, that term excludes such cost sales. "Failure on the part of the Lessee to pay any installment of rent * * as and when the same becomes due and payable * * * shall at the option of the Lessor cause the forfeiture of this lease." "This lease is not assignable, * * * and if this lease is assigned or the premises or any part thereof sublet without the written consent of the Lessor, * * * this lease may by such fact or unauthorized act be cancelled at the option of the Lessor. * *"

These parties also executed a "Supplement to Lease" which provides: "The parties to this lease agree that in no event shall the annual payments hereunder be less than $5.00 per square foot of rental area covered by this lease; however after the expiration of one year from the date of commencement of the term under this lease, the lessee hereunder shall have the option of requesting a review of those provisions hereof dealing with the payment of additional rental amounts over and above the $5.00 per square foot amount, said request to be for the purpose of determining whether or not the 8% of gross sales in excess of $80,000.00 is a hardship on the lessee. In the event said hardship is found to exist by the lessor said 8% payment on gross sales in excess of $80,000.00 shall be reduced to an amount necessary to relieve said hardship but in no event less than 6% on gross sales in excess of $80,000.00."

We find the facts to be that in negotiations for the lease defendant, acting through its president Graham, dealt with the plaintiff Clasen who never informed the president that a corporation would occupy the leased premises; that as a rental policy the defendant preferred that the drug store in this medical building be owned by an individual; that for the first year's operation of the drug store the gross sales were less than $80,000.00; that for each of the second, third and fourth years the gross sales were in excess of $80,000.00 but the plaintiffs did not pay any of the percentage rentals called for under the lease; and that defendant made demands for certified public accountant statements concerning the figures of the drug store operation from the plaintiff Clasen but that these were

never furnished to defendant. Clasen acknowledged there was no tender of the percentage rentals to the defendant for this four-year period of time. He contended that he was trying to get a "proper percentage" and had his auditor handle this matter for him. Clasen wanted to go on the "hardship" basis covered by the "Supplement to Lease" but failed and refused to give any statements regarding his operations to the defendant until May of 1963. The lease was entered into in May of 1959. In May of 1963 defendant received some notations on a piece of paper from the plaintiff Clasen's auditor. These are not in cogent form and the figures which are in proper form as prepared by Clasen's auditor were not given to Graham until the trial of this case. Clasen's contention was that the percentage rental in the lease should be reduced from eight to six percent because of "hardship" and he arranged a meeting with Graham to discuss that matter. As a result of that meeting defendant's auditor wrote a letter dated March, 1963, and addressed to Clasen, calling his attention to the percentage rental provisions of the lease and requesting that plaintiffs' auditor send a statement as to gross sales for the previous three years as required by the terms of the lease. Later in that same month Graham wrote to Clasen informing the latter of the defendant's decision to deny his request for a lower rental stating "It is not our wish to alter the lease in any respect as we are not convinced it results in a hardship in any respect." The letter closed with the demand that Clasen remit the amount due under the lease. In July of that same year another meeting was held between Graham, Clasen, and the latter's auditor. Again defendant refused to change the lease.

Graham also testified that the first he learned that a corporation was in possession of the drug store and operating it was when he received and read the plaintiffs' petition. There were three exhibits which were identified as checks given by Clasen in payment for the basic monthly rentals called for by the lease. On each of these at the top lefthand corner appear the words "Southtown Professional Pharmacy" and at the lower righthand corner above Clasen's signature appear the words "Southtown Professional Pharmacy". In April of 1964 defendant received a check in payment of the basic monthly rental upon which, immediately above Clasen's signature, appeared the words "Southtown Professional Pharmacy, Inc." This was the first check upon which the corporate character of Southtown Professional Pharmacy was ever indicated. Defendant refused this check and it was returned to Clasen together with a letter from defendant's attorneys stating that defendant did not recognize the corporation as the lawful tenant or assignee of Clasen's lease. Since that date defendant has refused acceptance of the basic monthly rental of $533.33 per month since it was tendered by the corporation and these payments were tendered into court. It is undisputed that Clasen never received any written permission from the defendant to the use, occupancy and possession of the leased premises by Southtown Professional Pharmacy, Inc.

Clasen testified that the plaintiff corporation was formed prior to the time he entered into the lease. It appeared from other evidence and exhibits that he paid for the purchases of equipment and fixtures used to set up the drug store by checks showing that he was an individual doing business as Southtown Professional Pharmacy. There is a sign in the window of the drug store overlooking the parking area and a sign on a vehicle used for delivery purposes by the drug store, both of which read "Southtown Professional Pharmacy". These photo exhibits showing such signs were taken by defendant's president after he was served with the petition stating that the premises were being operated by a corporation.

The trial court found for the defendant on plaintiffs' contention as to the percentage rental called for by the lease and awarded a money judgment for $15,882.06,

the amount of percentage rental due computed at eight percent of the gross annual sales over $80,000.00 plus interest at six percent of $2,025.77, and the sum of $6,933.33 as monthly basic rental from April 1, 1964 to May 1, 1965, about which there was no dispute.

The decree also specifically provided the trial court " * * * retains jurisdiction to order an accounting therefor by plaintiffs to defendant * * * " for the annual periods covered by the lease after the date of this action when the defendant shows the court the plaintiffs have failed or refused to furnish defendant figures on the gross sales for the year. The trial court found for the plaintiffs on the issue of cancellation of the lease. Its ruling as to plaintiffs' contention that the corporate plaintiff should be named the lessee does not clearly appear. In that portion of its decree refusing cancellation of the lease the trial court referred to the lease between the defendant " * * * and Edward W. Clasen, Lessee * * * " as being in full force and effect. However, in that portion of the decree dealing with the percentage rental due defendant the trial court specifically held that " * * * plaintiffs Edward W. Clasen and Southtown Professional Pharmacy, Inc., a corporation, are obligated to pay to defendant * * * " the rentals due.

In accordance with its contention the percentage rental due was to be computed at six percent, the plaintiffs had paid into the registry of the court a sum equal to six percent of the annual gross sales over $80,000.00; i. e., $11,886.50. Of this amount $7,255.15 was paid in when this action was filed on July 2, 1963, and $4,631.35 was paid in on December 10, 1964. The trial court entered its judgment on the 17th of May, 1965, and on June 25th, 1965, the defendant withdrew from the funds deposited with the court, by leave, the sum of $11,886.50 " * * * as and for percentage rental, and the same shall be paid out in partial satisfaction on account of the judgement of $17,907.83 as the same applies only

to the said percentage rental judgment and nothing herein contained shall effect payment nor satisfaction of the judgment for basic rent, * * * ".

■ The rules of review in such cases are well known. We are to try this action de novo ruling upon both the law and the evidence, but we are to give due deference to the findings of the trial court where credibility of the witness is involved. See § 527.070, RSMo 1959, V.A.M.S., and cases cited under Note 1.

■ We will first deal with the plaintiffs' appeal, but before proceeding to the merits of plaintiffs' contentions in that regard we must first dispose of plaintiffs' attacks upon this judgment as not being final and therefore not properly the subject of an appeal. The first argument advanced in support of the contention this judgment is not final has reference to that portion of the decree providing the trial court retains jurisdiction to order an accounting by plaintiffs to defendant for the remaining annual periods covered by the lease upon a proper showing by the defendant that the plaintiffs have failed or refuse to furnish figures for such periods to the defendant. This contention is without merit. The question of what is or is not a final judgment depends upon the circumstances of each individual case. Bennett v. Cutler, Mo., 245 S.W.2d 900. The decree in the instant case settles the equities and the rights and duties of the parties under the lease and it is nonetheless final because after doing so there remains the necessity for some future action or direction of the court in execution of the decree as it stands. Thompson v. Hodge, Mo. App., 348 S.W.2d 11, l.c. 13 [3, 4], citing Black on Judgments, 2nd Edition, Volume I, § 41, p. 60.

■ The second contention advanced by plaintiffs in support of this contention is that the trial court failed to specifically rule upon their request the corporate plaintiff be declared to be the proper lessee under said lease. Before passing upon this contention

we note that while the petition alleged the corporate plaintiff had paid the basic rent and been accepted and recognized by defendant as the actual tenant under the lease from the very beginning of the term thereof, this was not borne out by the proof. There was nothing to inform the defendant that its stated policy with regard to avoiding corporate lessees was being violated. The signs, the checks, every indication of ownership of this drug store was that it was privately owned by the plaintiff Clasen who was doing business as Southtown Pharmacy. Immediately upon receipt of the check of April 1, 1964, which, so far as the record shows, was the first information which would have given defendant knowledge the corporate plaintiff was in fact occupying these premises, the defendant objected, returned the rental check, and demanded cancellation of the lease on the grounds of an improper assignment of the lease. Be that as it may, passing to the merits of plaintiffs' argument, we hold the trial court disposed of this issue when it refused to decree cancellation. The somewhat contradictory language in the later portion of the decree which requires the corporate plaintiff to join with the individual plaintiff in paying the defendant the amount of rentals adjudicated as due may or may not be erroneous, but it does not affect the finality of the ruling upon this issue. We hold the plaintiffs' contentions with regard to this judgment as not being final are without merit.

■ Passing now to the merits of plaintiffs' allegation of error, their first contention is that the trial court erred in awarding defendant a money judgment based upon eight percent of the annual gross sales of the drug store in excess of $80,000.00. The plaintiffs' argument in this regard is that the provisions of the "Supplement to Lease" are void for the reason it is therein provided that whether a hardship on the plaintiffs is found to exist is to be determined by the defendant alone. They contend this provision is "unilateral and lacking mutuality" and therefore void.

Those interested in the applicability of plaintiffs' argument to the situation presented in the instant case may refer to Conservative Federal Savings and Loan Association v. Warnecke, Mo.App., 324 S. W.2d 471, 1. c. 480, where it is held: " * * It might be said that it was unwise for lessee to enter into such a contract where unfairness might be practiced against it, but that is no reason for declaring the provision void. We cannot alter the terms of the contract merely because the court is of the opinion there is a possibility that some of the provisions of the contract might operate unfairly to one of the parties. * * * " The same language would seem applicable where one of the parties is of that opinion. However, we need not decide this point. Assuming arguendo that the "Supplement to Lease" is void for the reasons contended by the plaintiffs, this allegation of error must still be ruled adversely to them. This for the reason that the lease itself clearly provides that in addition to the regular monthly installments of $533.33 the rental shall consist of eight percent of the annual gross sales of the drug store over and above $80,000.00. Assuming the "Supplement to Lease" is void as the plaintiffs contend, it would follow that the provisions as to percentage rental contained therein are also void. However, plaintiffs' argument in this regard is based upon the lack of "mutuality" in the determination of when a "hardship" exists. There is no mention of "hardship" in the rental provisions of the lease itself. No decision of any nature is called for by that document; the eight percent is due without any conditions. It would not follow that the provisions as to percentage rentals as contained in the lease itself are in any way affected by the decision as to the validity of the "Supplement to Lease". We are not cited to any authority supporting such a contention and cannot perceive of any reason why this should be so.

In this connection the basic contradiction inherent in plaintiffs' position becomes apparent. On one hand plaintiffs contend

the "Supplement to Lease" is void for the reasons before stated. On the other hand they contend they owe six percent on the annual gross sales over $80,000.00. The contradiction lies in the fact that this figure of six percent does not appear anywhere else in the lease nor in any other instrument with which we are here concerned. The figure of six percent can come only from the very language plaintiffs contend is void. This is but another reason why plaintiffs' contention is without merit and why there was no error in the trial court's finding that in addition to the basic monthly rental the defendant was due percentage rentals on the basis of eight percent of the annual gross sales of the drug store over and above the amount of $80,000.00.

■ Plaintiffs then advance an argument which is in the nature of an allegation that defendant is estopped to collect any percentage rental. We will not rule that issue for reasons that will appear later in this paragraph. However, we desire to parenthetically state that we find the evidence to be that defendant made a prompt decision upon finally receiving the figures it had repeatedly requested from the plaintiff Clasen and so cannot be held to have caused the delay. Moreover, as heretofore noted, it is difficult to see how any decision with regard to the provisions of the "Supplement to Lease" could suspend the provisions of the lease itself without some clear indication of agreement by the parties that such should be the case. No evidence of that notice appears in this record. Be that as it may, we do not rule this issue for the reason that if the defendant is estopped from collecting any percentage rental then what was the purpose of that portion of the petition which, in effect, pled that six percent was the correct percentage rental; why did plaintiffs pay a sum equal to six percent of the annual gross sales over $80,000.00 into the registry of the court stating it was the amount they owed defendant; and why have they maintained that position throughout the trial and upon appeal?

The contention now advanced is not the theory upon which plaintiffs pled or tried this case and it is not available to them now. In view of their actions and the admission they owe six percent on annual gross sales over $80,000.00, they have waived any requirement for decision on our part as to whether the defendant so delayed its decision as to the existence of a hardship within the meaning of the "Supplement to Lease" as to suspend the requirement of the lease itself with reference to percentage rental.

■ The plaintiffs next contend the trial court erred in awarding interest in the amount of $2,025.77. Their argument in this regard is two-fold. First they contend that the trial court has erroneously computed the interest due on the unpaid percentage rental. Plaintiffs' argument is that since the lease is dated May 1, 1959, the percentage rental would become due and payable on that date each succeeding year. They then refer to that provision of the lease which states that the percentage rental is to be "paid within thirty days of the expiration of each twelve-month period" contending the percentage rental was not delinquent until June 1st. They then restate their previously referred to argument that the defendant caused the delay in the payment of the percentage rental and, referring to the letter from defendant's president under date of May 31, 1963, seize upon that date as the date the rental becomes due and urge that no interest should have been figured until July 1, 1963. We cannot agree with this contention. As stated earlier herein, we find the defendant cannot be held to have caused any delay but that such delay as existed was the result of plaintiffs' actions in failing to furnish defendant with proper figures so that defendant could make a decision upon plaintiffs' request to involve the "hardship" provisions of the "Supplement to Lease".

■ However, we do hold the interest was incorrectly computed. The trial court began the computation of the interest due

on each year's percentage rental with May 1 of that year. The general rule is that " * * * 'interest, when allowed as damages, runs from the date when the right to recover a sum certain is vested in the plaintiff. In actions for breach of contract, it ordinarily runs from the date of the breach or the time when payment was due under the contract.' 15 Am.Jur. p. 584, Sec. 168. See, also, 17 C.J. 919, 920, 922; 25 C.J.S., Damages, § 92, pp. 637, 639." Prudential Ins. Co. of America v. Goldsmith, 239 Mo. App. 188, 192 S.W.2d 1, 1.c. 3. April 30th of each year is the date the annual period to which the percentage rental applies is to end, but it is neither the date when the right to recover a sum certain was vested in defendant nor the time when the payment of such a sum was due under the contract. The lease grants a 30-day period after the April 30th date and provides the percentage rental due is to be paid within that time. It follows that May 30th of each year is the date that payment of the percentage rental was due under the lease and interest does not begin to run until May 31st. The trial court therefore was in error in computing interest as it did.

Plaintiffs then contend that the trial court erred in awarding interest on the entire percentage rental. Their argument in this regard is that by paying into the registry of the court, after commencing this action, a sum equal to the six percent percentage rental which they contended was the correct amount due, plaintiffs made a tender which prevented the trial court, even though it found this sum was not the full amount due, from awarding interest based upon the eight percent figure. They urge that the trial court could only award interest on the difference between the six percent figure and the eight percent figure. There is no evidence in this case as to any tender being made prior to the filing of this action. Accordingly §§ 514.230 and 514.240, RSMo 1959, V.A.M.S., are not applicable. It was so held in Emerson v. Treadway, Mo.App., 270 S.W.2d 614. Thus the court's ruling in City of Mexico v. Baysinger, Mo.

App., 313 S.W.2d 166, where we held that a tender sufficient to have the effect of stopping the accrual of further interest must be for the full amount due, does not dispose of this issue for the tender in that case was made prior to suit. § 514.250, RSMo 1959, V.A.M.S., is inapplicable as that section of our statutes does not make any reference to interest but confines itself solely to costs that may have accrued. Also, it should be noted that we are not here dealing with the interest due upon a judgment. See City of St. Louis v. Senter Commission Company, 343 Mo. 1075, 124 S.W.2d 1180.

We think there are several reasons why plaintiffs' contention must be ruled adversely to them. In the first place we note that plaintiffs' deposit of the sum they alleged due defendant was unconditional. If the defendant had accepted it he would not be allowed to afterwards claim that he had done so as a payment on the account or in partial satisfaction of the total amount he alleged was due. Haeussler v. Duross, 14 Mo.App. 103; Adams v. Helm, 55 Mo. 468. Unless some express agreement to the contrary was reached by the parties to this regard, and there is no evidence of that nature in this case, acceptance of this tender would have prejudiced defendant's case for payment of a greater amount. Careful to avoid this result, defendant refrained from any action that might be construed as acceptance of plaintiffs' tender and did not withdraw the funds deposited until after judgment, doing so then only upon a recitation that such withdrawal was "in partial satisfaction". Plaintiffs content themselves with the statement that defendant could have withdrawn this money at any time. As illustrated by Haeussler v. Duross, supra, and Adams v. Helm, supra, defendant could only have done so with prejudice to its case. Plaintiffs cannot compel defendant to accept their tender. Emerson v. Treadway, supra. Defendant had its choice in the matter and chose not to accept. It is entitled to the benefit of the chance it took in the instant case in the form of in-

terest upon the full amount adjudicated due it from plaintiffs. As pointed out earlier herein in City of Mexico v. Baysinger, supra, we held that in order to stop the running of interest the tender must be for the full amount adjudicated due. The tender in that case was made prior to suit but we can perceive of no reason why the rule should be different when the tender is made after suit is filed. There is authority for the decision we reach on this issue. In Wheeler v. Cantwell, Mo.App., 140 S.W.2d 744, there was both a tender before and after suit was filed. It was there held that tender was obviously for less than the amount due and therefore insufficient to affect the running of interest. While stated as dictum the same view is expressed in Emerson v. Treadway, supra, at Head Note [6–8], l.c. 618 of 270 S.W. 2d.

It follows from what has been above held that the issues presented by plaintiffs' appeal must be ruled against them with the exception that the trial court should be ordered to re-compute the interest allowed and in so doing to use May 31st of each year as the start of the interest period. That disposes of plaintiffs' appeal and we pass now to the contentions raised by defendant in its appeal.

The defendant presents one basic proposition; i. e., the trial court erred in refusing to decree a cancellation of this lease. It advances two arguments why cancellation should be decreed; first, due to the lease being assigned or the premises being sublet to the corporate plaintiff without defendant's written consent, and second, the failure to pay the rentals due.

■ It is universally recognized that when leasing its property to Clasen the defendant could validly impose a restriction such as that here involved and provide forfeiture as a penalty for violation of that covenant. 32 Am.Jur., Landlord and Tenant, § 325, p. 295. Plaintiffs contend there is no proof of violation of this restriction.

■ Under the language of the covenant in this lease it is clear the parties contemplated two separate restrictions; one against subletting the premises or any part thereof and the other prohibiting an assignment of the whole lease. Stephenson v. Morrissey, Mo.App., 230 S.W.2d 124 [2, 3]. Our courts have held that the word "sublet" means to make a sublease accompanied by a surrender of the possession and control of the premises or at least a part thereof. Stephenson v. Morrissey, supra. There is no evidence in this case whatsoever of any sublease, and we will not deal further with that restriction. Does the record disclose an assignment of the lease to the corporate plaintiff? The defendant takes the position that that matter cannot now be in dispute due to the allegation of plaintiffs' petition; to wit, "* * * the Southtown Professional Pharmacy, Inc., a corporation, of which Edward W. Clasen is an officer and stockholder, owned the fixtures and property and assets put into said drug store hereafter referred to, and since the beginning of the lease said corporation has paid to the defendant, the basic rent as provided by the terms of said lease, and the defendant has accepted and recognized said corporation as the actual tenant of said property and the actual lessee under the terms of the lease hereinafter mentioned." We cannot agree that the petition constitutes proof of this matter. This allegation was denied by the defendant in its answer and moreover, as stated earlier herein, is clearly contrary to the facts as we find them which are that the corporate plaintiff never paid the basic rent nor did the defendant ever accept or recognize the corporate plaintiff as the actual tenant or the actual lessee. However, this does not mean we agree with plaintiffs that there is a total failure of proof as to this issue. An assignment of a lease is presumed where one other than the lessee is found in possession of the leased premises. Lucas Hunt Village Company v. Klein, 358 Mo. 1054, 218 S.W. 2d 595; 51 C.J.S. Landlord and Tenant § 37 e., pp. 558–559; 18A Mo.D. 265, Land-

lord & Tenant, ⬤⟶80½. Of course, such a presumption may be rebutted but in the instant case the plaintiffs not only failed to introduce evidence which would constitute a rebuttal but cannot now be heard to deny that there was such an assignment. Plaintiffs' proof and theory throughout the trial and the presentation of this appeal have been based upon the contention there was an assignment of this lease from Clasen to the corporate plaintiff who was in possession as, to quote from plaintiffs' petition, the "actual tenant" and the "actual lessee". There being no proof to the contrary, the presumption stands. It follows that plaintiffs have violated that provision of the lease forbidding assignment without written permission of the defendant. In view of the fact the plaintiffs' own evidence shows the plaintiff corporation was organized prior to the time Clasen entered into this lease with the admitted plan of operating these leased premises through it; that he never informed the defendant of that fact; signed the lease as an individual; and paid his rent and otherwise held himself out to be operating as an individual, we hold that the enforcement of the very wording of the lease he signed is not too harsh a remedy and should be decreed. This decision renders unnecessary a ruling upon the contention non-payment of rent requires us to decree cancellation.

It follows from what has been held above that this judgment should be reversed and the cause remanded to the trial court with directions to enter its judgment declaring the lease cancelled and the premises restored to the defendant; that a money judgment be entered in favor of defendant in the amount of the basic monthly rental due plus a sum equal to eight percent of the annual gross sales over $80,000.00 less cost sales as provided by the lease together with interest on such percentage rental at the rate of six percent to be computed by using May 31, 1961, as the date upon which interest is to start running. Costs of this appeal are to be taxed against the defendant.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment should be reversed and cause remanded to trial court with directions to enter its judgment declaring lease cancelled and premises restored to defendant; that a money judgment be entered in favor of defendant in the amount of the basic monthly rental due plus a sum equal to eight percent of the annual gross sales over $80,000.00 less cost sales as provided by the lease together with interest on such percentage rental at the rate of six percent to be computed by using May 31, 1961, as the date upon which interest is to start running. Costs of appeal to be taxed against defendant.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.