BUCKEYE DEVELOPMENT
COMPANY, Appellant,

v.

Alan B. FEINGOLD and Alan B. Feingold/Architects, Inc., Respondents.

No. WD 32155.

Missouri Court of Appeals,
Western District.

Dec. 22, 1981.

---

Alan E. South, Crews, Milliard & South, Kansas City, for appellant.

W. Robert King, Morris, Larson, King, Stamper & Bold, Kansas City, for respondents.

Before TURNAGE, P. J., and PRITCHARD and CLARK, JJ.

TURNAGE, Presiding Judge.

Buckeye Development Company filed an action for unlawful detainer and for the recovery of utility costs previously paid to Alan Feingold. The dispute centers about a lease between Feingold and Buckeye on part of a building owned by Buckeye. The court entered judgment in favor of Feingold and Buckeye appealed.

Buckeye contends that it was entitled to judgment because Feingold had assigned his lease to a corporation formed by Feingold in violation of the provisions of his lease. Buckeye concedes that if the judgment in favor of Feingold on the unlawful detainer action is affirmed, then its action seeking recovery of the previously paid utility costs fails also. Affirmed.

Feingold entered into a five-year lease in October, 1971, with L.P.F. Plastics Corp. The lease gave Feingold the option to extend the term for two additional five-year terms. Feingold elected to extend the lease in October, 1976 for the first of the two additional terms. The lease called for Feingold to pay $600 per month with the lessor to pay at least the electricity costs. Following a foreclosure of the interest of L.P.F. Plastics in the building, Buckeye became the owner and successor lessor. A disagreement between Feingold and Buckeye over a provision in the lease regarding the payment of utility costs led to a lawsuit which resulted in a declaration that the lessor was responsible for payment of utility costs. That judgment was affirmed by this court in *Feingold v. Buckeye Development Co.*, 573 S.W.2d 413 (Mo.App.1978).

The present controversy had its genesis in October, 1979, when Buckeye noticed that a monthly rent check from Feingold bore the legend on the check: Alan B. Feingold/Architects, Inc. When Buckeye noticed the "Inc." on the check, it returned the check to Feingold and took the position that Feingold had assigned the lease to the corporation in violation of a provision in the lease which prohibited assignment without the consent of the lessor. Feingold thereupon requested permission to assign the lease to the corporation, but Buckeye refused. Feingold then tendered rent on his personal account and this likewise was refused. Monthly tenders of rent since that time have also been rejected.

Upon occupying the premises in 1971, Feingold was engaged in his profession as an architect, and, in addition, operated an art business, managed his real estate business and operated an interior design business on the leased premises. None of these enterprises was incorporated until December, 1978, when Feingold incorporated his architecture business under the professional corporation law. The record is not clear as to whether or not there are other stockholders in the corporation, but a fair inference would be that Feingold is the only stockholder. In addition, the corporation filed under the Fictitious Name Act that it was doing business under the name Procurement Services, which was the interior decorating business Feingold had operated.

In January, 1979, Feingold began paying Buckeye the rent under his lease on checks of the same color and type as previously used except with "Inc." following the words "Alan B. Feingold/Architects." The addition of "Inc." was the only change in the checks and even though these checks were paid to Buckeye for the months of January through September, 1979, it was not until the October check that Buckeye noticed the addition of "Inc."

At the hearing on this suit by Buckeye to require Feingold to vacate the premises and to have the lease declared forfeited because of an unauthorized assignment to the corporation, Feingold testified that after the incorporation of his architecture business the same people were engaged in the same activities on the premises as they had been prior to the incorporation. After the incorporation Feingold continued to operate his art business and to manage his real estate business on the premises as an individual as he had done from the inception of the lease. There was no evidence that any exterior signs had been changed on the premises to reflect the incorporation and the only evidence as to any change whatever resulting from the incorporation was the addition of "Inc." on the checks. Feingold stated the

rent paid by the corporation had been deducted on its tax return.[1]

The trial court made findings of fact and conclusions of law finding for Feingold. The court held the only breach in the lease was one of a technical nature.

Buckeye contends that under *Duffy v. Clark Oil & Refining Corporation*, 575 S.W.2d 888, 889[2] (Mo.App.1978), an assignment of the lease is presumed when one other than the lessee is found in possession. Cases such as *Duffy* are distinguishable from this case because the party found in possession was a third party and not the lessee.

Buckeye also relies on *Clasen v. Moore Brothers Realty Co.*, 413 S.W.2d 592 (Mo. App.1967) which is closer to this case on its facts, yet it is inapplicable. In *Clasen* the court found that Clasen had incorporated his pharmacy business prior to entering into the lease. Apparently because of a policy which Moore Brothers had against leasing to corporations, Clasen concealed the fact that his business was incorporated. After signing the lease as an individual and entering into possession, Clasen caused signs to be displayed which revealed the corporate nature of the pharmacy. The court found Clasen's acts were calculated to deceive the lessor and held that the enforcement of a provision of the lease prohibiting assignment without consent was not too harsh a remedy.

The general rule concerning restrictions against assignments is stated in Annot., 89 A.L.R. 1325 (1934) as follows:

"Restrictions against assignments being a restraint against alienation, are not looked upon with favor by the courts, and from the earliest times have been construed by courts of law with the utmost jealousy to prevent the restraint from going beyond the express stipulations."

That Annotation also stated:

"The rule is well settled that an agreement by a lessee with a third person for

---

1. There was evidence from Buckeye that reasonable rent on the premises is now $1250 per month with the lessee to pay the utilities.

the permissive use by the latter of the leased premises does not constitute a violation of covenants in a lease against assigning or subletting, but merely amounts to a license to use the property."

In *Galluzzo v. Mannino*, 110 Conn. 507, 148 A. 347 (1930) leased premises were occupied by individuals under a lease which prohibit assignment without consent of the lessor. Thereafter a corporation was organized to conduct a loan business on the leased premises. The loan business was conducted in conjunction with the other business and most of the loans were made to customers of the other business in order to assist them in paying for their purchases. The lessor knew the corporation was formed and was doing business on the premises. Later the lessor declared the lease terminated because of the presence of the corporation in violation of the assignment provision. The court held that the loan company was present on the premises merely by permission of the lessee and as a licensee and this did not constitute a violation of the covenant against subletting or assigning.

In *Peacock v. Felton*, 243 Ill.App. 236 (1927) the lessee formed a corporation through which the lessee operated its previously existing shoe business. The court held the lease covenant cannot be violated when the use, possession or occupancy of the leased premises was that only of the lessees themselves. The court held that the formation of the corporation was only a system devised by the lessee for cost accounting purposes and did not result in occupancy by any other entity even though the court recognized the corporation in pure legal contemplation was a separate entity. The facts in *Peacock* are very similar to the facts here because in *Peacock* the same people conducted the same business, the only change being the formation of the corporation.

The same result as *Galluzzo* and *Peacock* resulted in *Beckanstin v. Public Sav. Life Ins. Co. of Charleston*, 123 Ga.App. 626, 182 S.E.2d 167 (1971). There the corporate lessee allowed a wholly owned subsidiary to operate on the leased premises. The subsidiary operated through the employees of the lessee so that no additional employees and no different type of business occupied the premises. The court recognized the lessee and the subsidiary were distinct legal entities, but applied the rule that the subsidiary was occupying the premises under permission which amounted to nothing more than a license. The court concluded that there had been no violation of the non-assignment provision in the lease.

This court concludes that the rule applied in *Galluzzo, Peacock* and *Beckanstin* should be applied in this case. Here the very same people conducted the very same business on the premises after the incorporation as they did before, and, in fact, Feingold continued to operate some of his business enterprises as an individual after the incorporation as he had done before. The corporation actually occupied the premises with the permission of Feingold under nothing more than a license. In accordance with the rule above stated, this does not constitute an assignment which would require termination of the lease.

The judgment in favor of Feingold on both counts is affirmed.

All concur.