Thomas G. LOVETT, Jr., Trustee for the Bankruptcy Estate of Transportation Systems International, Inc., Appellant,

v.

HONEYWELL, Inc., Appellee.

No. 90–5145.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1990.

Decided April 15, 1991.

Paul Taylor, Minneapolis, Minn., for appellant.

Barbara Kueppers, Minneapolis, Minn., for appellee.

Before McMILLIAN, Circuit Judge, MORRIS S. ARNOLD,[*] District Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The sole issue before this court is whether the district court[1] erred in reversing the bankruptcy court award of attorneys' fees and punitive damages against Honeywell, Inc. The bankruptcy court awarded these damages to Thomas G. Lovett, the bankruptcy trustee for Transportation Systems International, Inc., because Honeywell filed a petition with the Interstate Commerce Commission seeking a declaratory order, in violation of the automatic stay of the bankruptcy code. The district court reversed the bankruptcy court's order, holding that Honeywell did not violate the automatic stay because Honeywell's action before the ICC was in the nature of an interpleader, not an action against the debtor, and was not brought for the purposes of either obtaining possession of the debtor's property or exercising control over property of the bankruptcy estate. We affirm the judgment of the district court, although on somewhat different grounds.

Transportation Systems is a trucking company that transported products for Honeywell. The Interstate Commerce Act requires that motor carriers file tariffs with the Interstate Commerce Commission setting forth charges for all transportation services offered. 49 U.S.C. §§ 10761(a); 10762 (1988). Carriers can only collect the rates published in these filed tariffs. 49 U.S.C. § 10761(a). The Act also specifies that a carrier's rates and practices must be reasonable. 49 U.S.C. § 10701(a) (1988).

Following the deregulation of motor carriers in 1980, motor carriers began to negotiate rates with shippers. Many carriers, however, failed to file the negotiated rates with the ICC. As a result, at a later date, many carriers (or trustees in bankruptcy) would return to the shipper seeking undercharges (the difference between the negotiated rate and the higher tariff rate). Numerous disputes arose between carriers and shippers. Shippers argued that the collection of undercharges constituted an unreasonable practice in violation of 49 U.S.C. § 10701(a). Because undercharge claims are brought in federal district courts or in adversarial proceedings in bankruptcy, and not before the ICC, the ICC in 1986 offered to provide courts with an advisory opinion as to whether the collection of undercharges constituted an unreasonable practice. *National Indus. Transp. League—Petition to Institute Rulemaking on Motor Common Carrier Rates*, 3 I.C.C.2d 99, 100, 107 (1986) (*Negotiated Rates I*). On June 14, 1989, the ICC issued a second order, effective June 29, 1989, modifying its earlier policy, stating that it would accept initial jurisdiction of negotiated rate-undercharge cases without awaiting court referral. *National Indus. Transp. League—Petition to Institute Rulemaking on Motor Carrier Rates*, 5 I.C.C.2d 623, 624 (1989) (*Negotiated Rates II*).

Between 1984 and 1987, Transportation Systems negotiated rates with Honeywell for the transportation of Honeywell's products. The negotiated rates were different than the tariff rates filed with the ICC.

On June 10, 1987, creditors of Transportation Systems filed an involuntary petition in bankruptcy against Transportation Systems. The bankruptcy court appointed an

---

[*] The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas, sitting by designation.

[1] The Honorable Harry H. MacLaughlin, United States District Court for the District of Minnesota.

auditor to examine Transportation Systems' freight bills to determine if Transportation Systems' customers had paid the lawful rates published in tariffs with the ICC. As a result of the audit, Honeywell received notice in late 1988 or early 1989 that it owed the trustee for Transportation Systems $271,151.41 for undercharges.[2]

The day after the ICC decision in *Negotiated Rates II* became effective, Honeywell filed a petition with the ICC seeking a declaratory order that Transportation Systems' claimed undercharges constituted an unreasonable practice in violation of 49 U.S.C. § 10701(a). The following day, Transportation Systems filed an adversary proceeding in the bankruptcy court against Honeywell seeking to recover the undercharges. Transportation Systems notified Honeywell that its commencement of proceedings before the ICC violated the bankruptcy code's automatic stay provision and requested that Honeywell withdraw the pleadings. Honeywell refused, and Transportation Systems moved for a temporary restraining order from the bankruptcy court and an order holding Honeywell in contempt and imposing sanctions.

The bankruptcy court held that Honeywell's action before the ICC was barred while Transportation Systems was in bankruptcy. *Transportation Sys. Int'l, Inc. v. Lovett*, No. 4–87–1952, slip op. at 2–3 (Bankr.D.Minn. July 27, 1989). The bankruptcy court determined that Honeywell and its counsel knew that Transportation Systems was in bankruptcy before they initiated the ICC proceeding and then refused to withdraw the pleadings even after Transportation Systems' attorney requested that they do so. *Id.* at 3. The court concluded that Honeywell "unequivocally, intentionally and willfully violated the automatic stay provisions" of 11 U.S.C. § 362(a)(1) and (3) by initiating the ICC proceeding without leave of court. *Id.* at 2–3. The bankruptcy court assessed punitive damages in the amount of $5,000.00 and also ordered the reimbursement of at-

torneys' fees in the amount of $1,500.00. *Id.* at 3–4.

Honeywell appealed and the district court reversed the bankruptcy court's award of punitive damages and attorneys' fees. *Lovett v. Honeywell, Inc.*, 110 B.R. 888, 895 (D.Minn.1990). The district court concluded that section 362(a)(1) did not apply because the ICC action was not against the debtor and that Honeywell had not violated section 362(a)(3). *Id.* at 893. Although the court noted that the bankruptcy court judge had taken a clear position against referring undercharge disputes to the ICC, the court observed that Honeywell filed its petition with the ICC in response to the ICC's decision in *Negotiated Rates II*. The court held that the ICC action did not violate the purposes of the automatic stay provision because Honeywell's action did not assert a claim against the debtor's estate or threaten to disrupt the liquidation procedure. *Id.* at 893. The district court concluded that Honeywell's action sought only a determination from the ICC that Honeywell's claim for undercharges was an unreasonable practice. Thus, the action was neither an effort to obtain possession of the debtor's property nor an effort to exercise control over the debtor's estate, and did not therefore violate section 362(a)(3). *Id.* at 895.

Shortly before the bankruptcy court held a hearing on Transportation Systems' motion, this court decided *Maislin Industries v. Primary Steel, Inc.*, 879 F.2d 400 (8th Cir.1989), and after the bankruptcy court issued its order, this court decided *INF, Limited v. Spectro Alloys Corp.*, 881 F.2d 546 (8th Cir.1989).[3] In those cases, we held that the reasonableness of freight carriers' billing practices are matters within the primary jurisdiction of the ICC and that the decisions of the ICC could be set aside only if arbitrary, capricious, or unsupported by substantial evidence. *INF*, 881 F.2d at 550. On June 21, 1990, the Supreme Court reversed the decisions of this court and of several other circuits, holding that the filed

---

2. Honeywell alleges in its petition filed with the ICC that the trustee for Transportation Systems sought undercharges in excess of $271,932.04.

3. This court decided *Maislin* on July 17, 1989, and *INF* on August 3, 1989.

rate doctrine reflected in 49 U.S.C. § 10761 barred consideration of whether a carrier's attempts to collect undercharges constituted an unreasonable practice in violation of 49 U.S.C. § 10701. *Maislin Indus. v. Primary Steel, Inc.,* —— U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). The Supreme Court also observed that in the *Maislin* case the ICC only determined that the carrier engaged in an unreasonable practice, leaving the issue of whether the tariff rates were unreasonable open for exploration on remand. *Id.* 110 S.Ct. at 2767 n. 10.

Viewed in this context, the order of the proceedings shows the appropriateness of Honeywell's conduct. Honeywell filed its petition with the ICC the day after the effective date of *Negotiated Rates II*. Transportation Systems argued its motion for sanctions in the bankruptcy court some 11 days after this court's decision in *Maislin*. We also observe that in both *Maislin* and *INF*, the district court referred the issue of whether the carriers' billing for undercharges constituted an unreasonable practice to the ICC for ruling. At oral argument, the parties revealed that in the course of the bankruptcy proceeding, Honeywell filed a motion with the bankruptcy court to refer the reasonable rate issue to the ICC for ruling, and that the bankruptcy court entered an order making this referral.

■ We must decide only the propriety of the award of $1,500.00 in actual damages representing attorneys' fees and $5,000.00 punitive damages against Honeywell.[4] Thus, the legal issue before us is the applicability of 11 U.S.C. § 362(h), which provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." To recover under section 362(h), the party seeking the award must show that he was injured by the violation of the stay and that the violation was willful. *See H.T. Bowling, Inc. v. Bain,* 64 B.R. 581, 584 (W.D.Va.1986).

Honeywell argues that there is no evidence of injury, willful or otherwise, to Transportation Systems and that the *"appropriate circumstances"* required by section 362(h) do not exist. The trustee, on the other hand, argues that Honeywell clearly violated the automatic stay provision of section 362, particularly in view of the bankruptcy court judge's decisive position against referral. The trustee adds that Honeywell sought to circumvent the bankruptcy court by going directly to the ICC without asking for a referral, and that sanctions are required to secure future compliance.

This court recently affirmed an order of the district court reversing an award of actual and punitive damages for violation of the automatic stay provision of section 362(a). *United States v. Ketelsen,* 880 F.2d 990 (8th Cir.1989). The court, with Chief Judge Lay dissenting, concluded that there was no support for the award of compensatory damages and that punitive damages should not have been awarded. *Id.* at 992–93. Although the court agreed that defendant willfully violated the automatic stay provision, the court stated: "[W]e emphasize that 'appropriate circumstances' are also required. The cases interpreting 'appropriate circumstances' indicate to us that egregious, intentional misconduct on the violator's part is necessary to support a punitive damages award." *Id.* at 993.

■ We cannot conclude there has been a showing of "appropriate circumstances" in this case. Although the bankruptcy court ruled that Honeywell unequivocally and intentionally violated the automatic stay and that counsel's refusal to withdraw the pleadings after being requested to do so constituted "egregious circumstances," *Transportation Sys. Int'l,* slip op. at 3, we are convinced that in light of the unique circumstances presented here, the bankruptcy court's finding of "egregious circumstances" is clearly erroneous. Fed.R. Civ.P. 52(a). Our review of the record convinces us that Honeywell's conduct in filing

---

**4.** Armstrong World Industries, Inc. and The National Industrial Transportation League filed amicus curiae briefs in support of Honeywell's position.

the petition with the ICC did not rise to the level of egregious misconduct. The argument before the bankruptcy court concerned not only the meaning of section 362, but also the entire controversy surrounding undercharges as an unreasonable practice, ICC decisions in *Negotiated Rates I* and *Negotiated Rates II,* and *Maislin.* Although the bankruptcy court judge had taken a clear position against referrals, Honeywell filed its petition with the ICC the day after the effective date of *Negotiated Rates II.* We are convinced that in light of the *Negotiated Rates II* and *Maislin* decisions, substantial and difficult legal questions confronted Honeywell when it filed its petition with the ICC in June of 1989 and refused to withdraw the petition thereafter. Thus, even concluding that there was an intentional act in filing the ICC petition, there is no showing of egregious intentional misconduct to support a punitive damage award. *Ketelsen,* 880 F.2d at 993.

■ We are also satisfied that there is insufficient evidence in the record to support an award of actual damages, and therefore, an award of attorneys' fees is not appropriate. *See, e.g., Whitt v. Philadelphia Hous. Auth.,* 79 B.R. 611, 616 (Bankr.E.D.Pa.1987) ("costs and attorneys' fees, by the terms of § 362(h) are allowable only to embellish 'actual damages' ...."). The proceedings in the bankruptcy court consisted of the trustee's motion for a temporary restraining order and a finding of contempt. The trustee alleged that unless the bankruptcy court enjoined the ICC proceeding, the trustee would be forced to expend time and resources to defend the administrative proceeding. The evidence of damage before the bankruptcy court consisted of the time expended by trustee's counsel in bringing this motion. No evidence existed of time actually expended in defending the administrative action. We do not believe that the time expended bringing the motion for a temporary restraining order and contempt sanctions, in the absence of any other damage, is the type of damage contemplated by section 362(h). *Id.* Moreover, any claim of damage to the trustee by Honeywell's filing the

petition with the ICC evaporated when the bankruptcy court later appropriately referred the reasonable rate issue to the ICC for ruling.

Our decision is based on the narrow circumstances presented in this case. In light of the timing of the various decisions of the ICC and this court, we conclude that an award of actual or punitive damages is not appropriate. The district court did not err in reversing the bankruptcy court's decision.

We are urged by the parties, as well as amici, to determine whether Honeywell violated the stay provision of section 362. It is unnecessary for us to do so. What we have said above presupposes that such a violation occurred, but we assume this without deciding the issue. The sole issue for our determination was the award of actual and punitive damages. To decide whether a violation of the stay provision occurred would require us to analyze section 362, as well as to inquire into the issues of reasonable rates and referral. These issues have been mooted by the bankruptcy court's referral to the ICC after the events in issue here.

We affirm the judgment of the district court.

ARNOLD, District Judge, dissenting.

I respectfully dissent. At the very least, in my view, the plaintiff in this case has shown that it has incurred attorneys' fees as a result of Honeywell's petition to the ICC; and I am not, moreover, convinced that the bankruptcy court's determination that Honeywell's conduct was egregious and intentional was clearly erroneous. I would therefore reach the merits of the question of whether Honeywell's action was in fact a violation of Section 362(h). For reasons that I need not elaborate in this context, I believe that Honeywell was indeed in violation of the statutory stay, and this view is not affected by the possibility that the relief petitioned for may have been within the primary jurisdiction of the ICC. If it was, the proper action for Honeywell was to petition the bankruptcy

court for a referral, not to take matters into its own hands.

I would therefore reverse the district court.