In re HEN HOUSE INTERSTATE, INC., Debtor.

LOETHEN OIL CO., Movant,

v.

HEN HOUSE INTERSTATE, INC. and James S. Cole, United States Trustee, Respondents.

Bankruptcy No. 91–45623–293.

United States Bankruptcy Court, E.D. Missouri, E.D.

Jan. 28, 1992.

David A. Warfield, St. Louis, Mo., for debtor.

Carl J. Spector, St. Louis, Mo., for Landmark.

Vincent D. Vogler, St. Louis, Mo., for Creditors' Committee.

Terrance L. Farris, St. Louis, Mo., for Loethen Oil.

James S. Cole, St. Louis, Mo., Asst. U.S. Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Chief Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O), which the Court may hear and determine.

### INTRODUCTION

This case presents the court with the question of whether a creditor's post-petition attempt to collect a rent payment for a three month period, part of which period expired prior to the debtor's filing, constitutes a violation of the automatic stay when the lease under which such rent is due states that the rent becomes payable on the thirtieth day after the rental period expires.[1]

### FACTS

Loethen Oil Co. (Loethen) leased land in Rock Port, Missouri to Hen House Interstate, Inc. (Hen House) on which Hen House planned to operate a restaurant and service station. Under the lease, Debtor paid Loethen rent in twelve equal payments per year. An amendment to the lease provided that Hen House would pay Loethen "as an additional rent an amount equal to one percent (1%) of gross annual restaurant food sales.... This rental is to be paid quarterly within 30 days after the quarterly anniversary of the opening for business of said Rock Port Plaza on May 10, 1977." Hen House subsequently rented the gas station portion of the premises back to Loethen who paid rent on a monthly basis.

On September 5, 1991, Hen House filed a petition under Chapter 11 of the Bankruptcy Code. The Debtor then tendered a pro-

---

1. The parties stipulated that the rent Debtor paid to Loethen Oil Co. was "payable quarterly, on the 15th day of the first month after the end of the quarter." The lease amendment, however, states that the rent "is to be paid quarterly within 30 days after the quarterly anniversary of the opening for business of said Rock Port Plaza on May 10, 1977." This difference is immaterial to our decision.

rated amount of rent [2] to Loethen Oil as its additional rental payment under the amended lease. In November, after the thirty day period for payment of the additional rent had expired, Loethen sought to offset its rent due to Hen House for the month of October with the unpaid prorated portion [3] of the previous quarter's rent it maintained Hen House owed it.

## DISCUSSION

### VIOLATION OF THE AUTOMATIC STAY

■ Neither party has found any cases which address the issue before the court. Loethen Oil Co. argues that under the terms of the lease, the quarterly rent was not due until thirty days after the end of the quarter and that at that time the obligation for the entire balance of the quarterly rent arose. To support its position, Loethen Oil Co. cites Missouri authority holding that payment language similar to that in their lease with Hen House creates in the lessor a vested right to payment on the thirtieth day of the payment period.[4] Loethen Oil Co. maintains that their right to payment did not vest until the thirtieth day after the quarter ended, that no debt was owed before that date and that the entire quarterly rent arose post-petition, on the thirtieth day after the quarter ended.

According to Loethen's reasoning, the offset could not violate the automatic stay because there was no pre-petition debt involved. Further, Loethen charges that the debtor in possession breached its duty under 11 U.S.C. § 365(d)(3) [5] when, after filing, it tendered a quarterly rent prorated to the filing date.

Contrarily, the Debtor asserts that the debt for the quarterly rent accrued over the entire quarter and that the filing of the Debtor's petition rendered the rent attributable to the Debtor's use of the premises from the beginning of the quarter to the date of filing a pre-petition claim and the rent allottable to the time of filing to the end of the quarter a post-petition debt. To support its position Debtor points, first, to the fact that the Bankruptcy Code sharply distinguishes between the pre-petition time period and the post-petition time period.[6] Debtor then analogizes this case to a number of cases in which the accrued vacation and severance benefits of individual debtors were held to have been earned during the course of the debtors' pre-petition employment and not when the debtors received them post-petition.[7] The Debtor maintains that Loethen's right to its quarterly rent accrued as the quarter passed and could therefore be prorated, rendering Loethen Oil Co.'s offset of the portion of

---

**2.** The amount of rent paid represented one percent (1%) of the food sales for the period beginning September 5, 1991, the day after Hen House filed its petition in bankruptcy, and ending on September 30, 1991, the last day of the quarter.

**3.** Hen House did not pay Loethen Oil Co. the quarterly rent accrued between July 1, 1991, the beginning of the quarter and September 5, 1991, the day it filed its petition in bankruptcy.

**4.** Loethen Oil Co. cites *Clasen v. Moore Brothers Realty Co.*, 413 S.W.2d 592 (St. Louis Ct.App., 1967). As this court reads that case, the appellate court there held that when a lease provides for payment of rent thirty days after the end of the term, no breach of contract occurs until that thirtieth day has passed. *Id.* at 600. After the thirtieth day past the term has expired, the lessor has a vested right to payment and the court would include as damages, interest calculated from that point in time. *Id.* Nowhere does the *Clasen* court speak to whether the rent due accrues over the term of the lease or *in toto* upon the expiration of the payment period.

**5.** Section 365(d)(3) of the Bankruptcy Code imposes a duty upon the debtor in possession to "timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed, or rejected, notwithstanding section 503(b)(2) of this title."

**6.** As examples of the Code's separation of pre-petition transactions and post-petition transactions, the Debtor cites: § 502(b)(1) (which directs the court to determine a claim "as of the date of the filing of the petition"), § 503(b)(1)(A) (which defines post-petition claims), and § 502(b)(2) (which disallows a claim for interest that has not matured when the debtor files its petition).

**7.** *See In re Ohio Corrugated Company*, 115 B.R. 572 (Bankr.N.D.Ohio 1990), *In re Chicago Lutheran Hospital Association*, 75 B.R. 854 (Bankr. N.D.Ill.1987).

the rent attributable to the pre-petition portion of the quarter a violation of the automatic stay.

This court agrees with the Debtor's position. The Code clearly distinguishes between the pre-petition and post-petition periods. The Debtor used the lessor's premises and derived benefit from those premises over the course of the quarter. In this sense the lessor, Loethen Oil Co., earned its rent as the quarter passed. Under the terms of the lease, payment of the additional rent was not due until the thirtieth day after the completion of the quarter. However, a distinction exists between when payment is due and when a transaction occurs and this court holds that Hen House properly separated the additional rent it owed to Loethen Oil Co. into a pre-petition and post-petition component.

In addition to Debtor's severance and vacation pay analogies, the court finds support for its position in the Eighth Circuit's decision in *In re Ketelsen*, 880 F.2d 990 (8th Cir.1989). In that case, the Farmers Home Administration sought to offset the prepetition debt owed to it with the debtors' tax refund allottable to the year preceding the filing of debtors' Chapter 12 petition. The refund, however, was not to be returned until after the debtors had filed their petition. The court treated the refund as property of the estate; indicating that the time of payment can be differentiated from the time in which the right to that payment accrues and suggesting that the later determines the nature of a debt. *Id.*

Having determined that the quarterly rent Hen House owed to Loethen can be separated into a pre-petition and post-petition component, this court holds that Loethen Oil Co.'s attempt to set-off a post-petition debt it owed the Debtor against that pre-petition debt constituted a violation of Section 362's automatic stay.

## DEBTOR'S CLAIM FOR DAMAGES UNDER § 362(h)

Hen House claims Section 362(h) of the Bankruptcy Code entitles it to recover from Loethen Oil Co. both actual and punitive damages from Loethen. Hen House cites *In re Atlantic Business and Community Corp.*, 901 F.2d 325 (3rd Cir.1990), which held that a willful breach of the automatic stay entitling a debtor to damages under § 362(h) does not require a specific intent to violate the stay but occurs when "the defendant knew of the automatic stay and ... defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded." *Id.* at 329 (*citing In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989)).

Loethen argues, first, that they did not violate Section 362's stay because they, in good faith, sought timely court review of the situation. Second, Loethen asserts that the Debtor has not proven that the alleged violation of the stay caused it to suffer any damages. Finally, Loethen maintains that Congress intended, with its enactment of the Bankruptcy Code, to protect commercial landlords and their right to rent payments and that this intent militates against finding a violation of the stay in this case.

The Eighth Circuit has read Section 362(h) narrowly. In applying that section, the Circuit Court has emphasized that it only authorizes the imposition of punitive damages in "appropriate circumstance." *In re Ketelsen*, 880 F.2d 990, 993 (8th Cir.1989). Further, the Circuit Court has held that a court can only award attorney's fees and costs under Section 362(h) after the debtor has proved it suffered other "actual damages." *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 629 (8th Cir.1991) (*citing Whitt v. Philadelphia Hous. Auth.*, 79 B.R. 611, 616 (Bankr.E.D.Pa.1987))

In *Lovett v. Honeywell*, the court held that the debtor failed to prove it suffered other actual damages when the only claimed damages resulting from the creditor's violation of the automatic stay consisted of "the time expended by trustee's counsel in bringing this motion (seeking sanctions for creditor's violation of the au-

tomatic stay)." 930 F.2d at 629.[8] The only evidence Hen House has presented to the court on the issue of damages is an accounting of the time the Debtor's attorney has spent in researching, writing and revising the documents submitted in these proceedings concerning Loethen's violation of Section 362's stay. Under the Circuit Court's holding in the *Lovett* case, Debtor has not proven the other actual damages to which this court may attach an award of fees accrued during the pendency of this action.

◼ Debtor has also asked this court to assess punitive damages against Loethen Oil Co. for its misconduct. The Eighth Circuit, like the Third Circuit, holds that a "willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *In re Knaus*, 889 F.2d 773, 775 (8th Cir.1989). The Eighth Circuit, however, has held that before a court can award punitive damages, it must find both a willful violation of the automatic stay and the "appropriate circumstances" referred to in Section 362(h). *In re Ketelsen*, 880 F.2d 990, 993 (8th Cir.1989). Only "egregious misconduct" will support an award of punitive damages in the Eighth Circuit. *In re Ketelsen*, 880 F.2d 990, 993 (8th Cir.1989). A creditor who, on the advice of counsel, improperly offsets a debt owed it against property of the estate, without more, has not acted in an egregious manner so as to justify an award of punitive damages for the transgression. *Id.*

◼ Further, the Circuit Court has refrained from imposing punitive damages under Section 362(h) when the violator has acted in the face of substantial and difficult legal questions. *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 629 (8th Cir.1991). The ques-

tions Honeywell Inc. confronted in *Lovett* were more complex than those Loethen faced in this case.[9] However, the court recognizes and the parties' inability to find any cases on point demonstrates the uncertainty Loethen faced in deciding whether it was entitled to offset the rent it owed Hen House with the portion of the quarterly rent it believed Hen House owed it. The uncertainty Loethen faced militates against the imposition of punitive damages in this case.

## CONCLUSION

For the above reasons, this court holds that Loethen violated Section 362's stay when it offset the prorated portion of the quarterly rent against the rent it owed to Hen House. Hen House is entitled to the rent so offset. Hen House, however, has failed to demonstrate what damages, other than the costs of bringing this cause, it sustained as a result of Loethen's violation of the stay which precludes this court from awarding the costs and attorney's fees Debtor seeks. Finally, Loethen's attempted offset was not egregious and cannot support an award of punitive damages.

An Order consistent with this Memorandum Opinion is being filed this date.

## ORDER

For the reasons set forth in the Memorandum Opinion filed this date, it is

ORDERED THAT

(1) Loethen Oil Co. willfully violated the automatic stay when it sought to offset the post-petition rent it owed Debtor with the prorated portion of the quarterly rent attributable to the part of the quarter that expired before Debtor filed its bankruptcy petition; and

8. The violation in the *Lovett* case was a creditor's filing of a petition with the Interstate Commerce Commission to make a determination as to whether, in trying to collect alleged underpayments from the creditor, debtor had acted in contravention of ICC regulations requiring it and other interstate carriers to follow reasonable pricing practices. 930 F.2d at 627. The Circuit Court indicated that had debtor proven it had incurred costs in defending the creditor's action before the ICC, it would have satisfied its

burden of proving other actual damages and been entitled both to the fees it incurred in the ICC proceeding and those it incurred in the action before the Bankruptcy Court. *Id.* at 629.

9. The creditor in *Lovett* faced questions of whether Interstate Commerce Commission regulations forbidding unreasonable rates and billing practices forbad interstate carriers' from collecting undercharges from their customers.

(2) Debtor has not offered sufficient proof to recover damages under 11 U.S.C. § 362(h).