# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-2830

———————

Randy Lee Dahl,                          *
                                         *
    Plaintiff - Appellee,           *
                                         *  Appeal from the United States
v.                                       *  District Court for the
                                         *  District of South Dakota.
Douglas Weber,                           *
                                         *
    Defendant - Appellant.          *
                                         *

———————

Submitted: May 14, 2009
Filed: September 4, 2009

———————

Before LOKEN, Chief Judge, EBEL[*] and CLEVENGER,[**] Circuit Judges.

———————

LOKEN, Chief Judge.

In December 2003, a South Dakota state court granted inmate Randy Lee Dahl a writ of habeas corpus after concluding that the Ex Post Facto Clause barred the South Dakota Department of Corrections (DOC) from withholding good-time credits based on a statute enacted after Dahl's offense. The court ordered Dahl's immediate

———————

[*]The HONORABLE DAVID M. EBEL, United States Circuit Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation.

[**]The HONORABLE RAYMOND C. CLEVENGER, III, United States Circuit Judge for the United States Federal Circuit, sitting by designation.

release because his sentence would have expired in May 2002 had good-time credits not been withheld. Dahl v. Weber, Civ. 03-108 (S.D. Cir. Dec. 11, 2003). Dahl then commenced this § 1983 action, seeking damages for an unconstitutionally prolonged incarceration. Named as defendants were Jeff Bloomberg, the Secretary of DOC who made the December 1996 decision to withhold good-time credits; Warden Bob Dooley, who recommended that credits be withheld; and Warden Douglas Weber, the respondent in Dahl's habeas action who admitted service of the habeas petition on August 21, 2003. Ruling on defendants' motion for summary judgment, the district court denied absolute immunity, granted Bloomberg and Dooley qualified immunity, and denied Weber qualified immunity for the period beginning with the admission of service and ending with Dahl's release on December 15, 2003. Weber appeals that interlocutory ruling. We reverse.

## I. Background

Dahl was convicted of two counts of sexual contact with a child and sentenced to consecutive five-year prison terms in November 1995. Under South Dakota law, an inmate imprisoned for a crime committed before July 1, 1996, was entitled to have his sentence reduced for good conduct. See S.D. Codified Laws § 24-5-1.[1] Prior to July 1, 1995, good-time credits could be withheld only if the inmate violated prison rules or evinced "an intent to reoffend." See § 24-2-18 (1994); Delano v. Petteys, 520 N.W.2d 606, 609-10 (S.D. 1994). Effective July 1, 1995, § 24-2-18 was amended to provide that good-time credits could be withheld "for any person convicted of a sex crime . . . who fails to fully cooperate with all treatment offered." DOC initially applied this amendment to all old-system sex offenders who refused treatment, regardless of when their offenses were committed. Therefore, when Dahl refused sex

---

[1]These good-time credit provisions do not apply to those imprisoned for crimes committed after July 1, 1996. See S.D. Codified Laws § 24-15A-3. Inmates convicted of crimes committed before July 1, 1996, such as Dahl, are referred to as "old-system" inmates.

offender treatment, Warden Dooley recommended and Secretary Bloomberg ruled after an August 1996 hearing that Dahl's credits must be withheld.

In June 1997, a state court held that withholding mandatory good-time credits based on an amendment enacted after the inmate earned good-time credits violated the Ex Post Facto Clause of the United States and South Dakota Constitutions. Hughes v. Bloomberg, Civ. 96-1898 (S.D. Cir. June 27, 1997). Based on that decision, DOC restored credits that had been withheld from at least four sex offenders whose offenses were *committed* before July 1, 1995, and who refused sex offender treatment. This DOC practice was noted by the Supreme Court of South Dakota in Meinders v. Weber, 604 N.W.2d 248, 263 (S.D. 2000).

Dahl committed his two sex offenses in December 1993 and June 1995, but his offense date was erroneously entered into DOC's computerized records as August 14, 1995, the date of his arrest. After the decision in Hughes, Dahl learned that another inmate's good-time credits had been restored. He made several unsuccessful requests that his withheld credits be restored, being told his credits were not restored "because of my date." When he complained again at a March 2002 parole hearing, the DOC Records Administrator asked staff if the complaint was valid. Laurie Feiler, Special Assistant for Adult Corrections, responded that Dahl's credits were properly withheld if his offense date was August 14, 1995, after the July 1, 1995, amendment. Feiler later discovered the error in recording Dahl's offense date during a routine audit of DOC inmate files in November 2002. However, she did not recognize the impact of the error or bring it to anyone's attention.

When Dahl later learned of the offense date's significance from another inmate, he complained again, this time emphasizing that his offense date was prior to the July 1995 amendment. After consulting an inmate legal adviser, he filed a pro se habeas petition in state court, naming Weber as respondent and alleging that DOC's retroactive application of the July 1, 1995, amendment violated the Ex Post Facto

Clause and unconstitutionally increased his sentence. Weber signed an admission of service. Appointed counsel for Dahl filed an amended petition, and an Assistant Attorney General filed a motion to dismiss. Based on Dahl's criminal file, the attorneys' fact Stipulations, and a telephonic argument hearing, the court denied Weber's motion to dismiss and granted the writ. Dahl was immediately released. This lawsuit followed.

In its summary judgment ruling, the district court held that increasing Dahl's sentence by retroactively cancelling mandatory good-time credits was a clearly established violation of the Ex Post Facto Clause of the United States Constitution. The court denied Weber qualified immunity because Dahl's habeas petition put Weber on notice that Dahl's offenses occurred before the 1995 amendment took effect, Dahl's prison record had by that time been corrected, and therefore "[g]enuine issues of material fact exist as to whether a reasonable official in Weber's position would have known that the failure to restore Dahl's good-time credits and release Dahl from incarceration violated the law." Dahl v. Weber, Civ. 06-4264 (D.S.D. Aug. 5, 2008). We review the denial of qualified immunity *de novo*. Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994).

## II. Discussion

Qualified immunity protects public officials from damage liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It was clearly established in 1997 that the Ex Post Facto Clause prohibits retroactive application of a statute making the award of good-time credits "more onerous" than when the inmate's crime was committed, Weaver v. Graham, 450 U.S. 24, 30-31 (1981); see Lynce v. Mathis, 519 U.S. 433 (1997); Williams v. Lee, 33 F.3d 1010 (8th Cir. 1994), cert. denied, 514 U.S. 1032 (1995). Here, Dahl seeks damages from Weber for the period after his habeas petition was filed but before the writ was

-4-

granted. Dahl has not cited, and we have not found, a § 1983 decision in which money damages were awarded for an Ex Post Facto Clause violation; a writ of habeas corpus is the remedy typically sought in Ex Post Facto Clause cases. He relies on Williams, which did not address damages or qualified immunity, and on cases holding that prolonged detention after a prison sentence has been served, or contrary to a judicial release order, violates the detainee's due process-protected liberty interest. See Davis v. Hall, 375 F.3d 703, 712-16 (8th Cir. 2004), and cases cited. Though the issue is not free from doubt, we assume without deciding that Dahl claims a violation of a clearly established constitutional right.

Section 1983 liability is personal. Doran v. Eckold, 409 F.3d 958, 965 (8th Cir.) (en banc), cert. denied, 546 U.S. 1032 (2005). To recover § 1983 damages from Weber individually, Dahl must establish that Weber was personally involved in, or directly responsible for, Dahl's prolonged incarceration, Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006), and that Weber was deliberately indifferent to Dahl's plight, Davis, 375 F.3d at 718. "[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987). It is undisputed that Warden Weber was not involved in the withholding of Dahl's good-time credits in 1996, or in the parole board's decision not to restore those credits in 2002. Weber's personal involvement was limited to admitting service as the respondent named in Dahl's August 2003 state habeas corpus petition.

The district court denied Weber qualified immunity because Dahl's habeas petition alleged that his offenses were committed before the July 1995 amendment to § 24-2-18, and therefore a jury could find that Weber reasonably should have known that the failure to restore Dahl's good-time credits and release Dahl from incarceration violated the law. However, Dahl failed to present evidence that Weber had the authority to restore Dahl's good-time credits and order his release. Weber testified that, while the warden "unlocks the gate," the inmate's release order comes from the Central Records Administrator. It is undisputed that DOC Secretary Bloomberg was

responsible for restoring good-time credits that had been withheld.  See S.D. Codified Laws § 24-5-1 (Secretary of Corrections' decision to withhold good-time credits is final).  Thus, Weber lacked the unilateral authority to restore Dahl's credits and release him.

In Davis, we held that officials who detained an inmate for fifty-seven days with knowledge of a judicial release order violated the inmate's clearly established right to liberty.  375 F.3d at 719.  But in Davis, the judicial order provided authority needed to release the inmate.  Here, Dahl seeks damages for being incarcerated *before* the judge granted his habeas petition and ordered his release.  Weber cannot be liable for not releasing Dahl at that time unless he had the authority within DOC to do so.  See Mayorga, 442 F.3d at 1132 (prison officials who received complaints protesting an inmate's sex-offender classification, but lacked authority to change his classification or authorize his early release, were entitled to qualified immunity).

Dahl further argues that Weber "turned a blind eye" to allegations in Dahl's habeas petition that established his right to immediate release.  But there is no evidence Weber *knew* Dahl was entitled to be released.  Dahl's right to release could only be determined by consulting his central prison record (assuming that Feiler had in fact corrected that record) or by repeating Feiler's November 2002 audit of Dahl's underlying criminal file.  The few decisions that have based a finding of deliberate indifference on a failure to investigate have uniformly involved defendants who had the *duty* to review the inmate's status and the *authority* to release him.  See Alexander v. Perrill, 916 F.2d 1392, 1396-98 (9th Cir. 1990) (no qualified immunity for breach of duty to investigate claim of sentence credit error); Sample v. Diecks, 885 F.2d 1099, 1110-12 (3d. Cir. 1989) (senior records officer who did not follow prescribed procedures).  Here, at the time he admitted service of the habeas petition, Weber had neither.  Absent such duty and authority, the general rule is that officials are not "required by the Constitution to investigate independently every claim of innocence." Baker v. McCollan, 443 U.S. 137, 145-46 (1979).

Moreover, it is undisputed that Weber did not simply ignore Dahl's habeas petition. As the nominal respondent, he transmitted the petition to the Attorney General, relying on that office to respond appropriately. Dahl's attorney then filed an amended petition, which included an additional Fifth Amendment claim. Rather than admit Dahl was entitled to the claimed relief, an Assistant Attorney General moved to dismiss the amended petition. The attorneys prepared fact stipulations, argued the issues in a telephonic hearing, and -- two months later -- received a lengthy decision from the court granting habeas relief. In these circumstances, even if Weber had the authority to investigate Dahl's offense date at Central Records, his conduct in accepting service of the habeas petition and transmitting it to DOC's attorneys does not establish or even evidence deliberate indifference.

For the foregoing reasons, although we regret that a series of errors resulted in substantially extending Randy Dahl's prison term, we conclude that Weber is entitled to qualified immunity from individual damage claims as a matter of law. We need not consider Weber's additional contention that the district court erred in denying him absolute immunity. The order of the district court is reversed in part, and the case is remanded with directions to grant summary judgment in favor of defendant Weber.

_____