WOLLMAN, Circuit Judge.
Richard Garden, acting as trustee for certain farm property pursuant to a deed of trust, brought this interpleader action seeking a determination of rights to the sales proceeds from an auction of the farm. Central Nebraska Housing Corp. (CNH) and John Zapata challenge the district court’s[1] orders: 1) denying CNH’s partial motion for summary judgment, in which CNH argued that it had a contract to purchase the farm for $118,000; 2) granting Rick and Loretta Robertses’ partial motion for summary judgment concerning whether the sale of the farm to Gittaway Ranch, LLC could be set aside; 3) granting in part the Robertses’ second motion for partial summary judgment concerning the reduction of CNH’s secured claim; and 4) awarding sanctions against Zapata and CNH. We affirm.
I. Background
The Robertses owned a farm in Sheridan County, Nebraska. On January 22, 2010, they filed for Chapter 7 bankruptcy, claiming a homestead exemption in the farm under Nebraska Revised Statutes §§ 40-101 to 40-108. On May 19, 2010, Zapata’s company, CNH, acquired a first deed of trust in the farm by virtue of a post petition assignment of a promissory note and trust deed. The trust deed granted the trustee a power of sale and secured, among other things, the following:
Payment of any sums advanced by Beneficiaries or Trustee (with interest as herein provided), which sums are reasonably necessary or incidental to improvement or protection of the Trust Property; or which sums are expended in the exercise of rights granted herein. These sums include, but are not limited to, sums advanced for payment of taxes, insurance, abstracting, survey, recording, publication expense, court costs, expenses of litigation (including any fees of an attorney to the extent authorized by law), and expenses of sale.
The trust deed provided beneficiaries with the right to “inspect the Trust Property at any reasonable time and [to] perform any acts authorized hereunder.”
On June 1, 2010, the Robertses defaulted on their obligations arising under CNH’s trust deed, thereby triggering the trustee’s authority to sell the farm. On July 15, 2010, CNH obtained relief from the automatic bankruptcy stay and filed a proof of claim asserting a secured claim. On July 20, 2010, CNH filed notices of default and elections to sell the farm.
On November 15, 2010, Greg Frayser, acting as the representative for the trustee, conducted an auction to sell the farm. Rick Roberts and representatives from Pinnacle Bank, CNH, Coljo Investment, and Gittaway Ranch, LLC attended the sale. Before the auction opened, Frayser read aloud a bid sheet that stated, in part, “The Trustee’s Sale will remain open for ten (10) minutes and I will accept any bids offered during that time.” Frayser did not announce that he would close the sale immediately upon the expiration of ten minutes and refuse to accept any further bids.
CNH opened the bidding, and thereafter Pinnacle Bank, CNH, Coljo Investments, and Gittaway Ranch bid against each other. Immediately before the ten-minute *903 period expired, CNH bid $113,000. Fray-ser then announced the expiration of the ten-minute period. Frayser did not issue a warning that the ten-minute period was about to expire, nor did he solicit any additional bids before closing the auction. Frayser did not announce that the property was sold to CNH. Pinnacle Bank protested the auction’s conclusion. After Frayser consulted with the trustee, he accepted additional bids, over CNH’s protestation. CNH bid $166,100, but its bid was topped by a $166,500 bid by Gittaway Ranch. Frayser recorded Gittaway Ranch as the “highest and prevailing bidder” on the bid sheet. Gittaway Ranch assigned its successful bid to Coljo Investments (owned by Zapata and his wife), which paid the trustee $166,500 for the farm.
Pinnacle, CNH, and Security First made competing claims to the sales proceeds. The trustee then filed an interpleader action in the bankruptcy court seeking a determination of the claims. The bankruptcy court found that it lacked jurisdiction over the interpleader complaint and transferred the case to the district court.
CNH and the Robertses filed cross motions for partial summary judgment. CNH argued that it had purchased the farm for $113,000 and that $53,500 of the sales proceeds should be returned to it. The Robertses argued that the district court should uphold the sale of the farm to Gittaway Ranch. The district court denied CNH’s motion and granted the Robertses’ motion.
The Robertses later filed a second motion for partial summary judgment, arguing that their homestead exemption entitled them to $60,000 from the sales proceeds and disputing, among other things, the amount of CNH’s secured claim. Specifically, the Robertses argued that CNH’s claims for $17,426 for monthly inspections of the farm and for $7,553.57 in attorney’s fees were not part of its secured claim. The district court granted the Robertses’ motion in part, finding that CNH’s inspections of the farm before July 15, 2010, were attempts to further encumber the farm and were void as being in violation of the automatic stay; that the Bankruptcy Code allowed the Robertses to avoid the inspection fees occurring after July 15, 2010; and that CNH had failed to set forth evidence that the attorney’s fees should be included as part of its secured claim.
Following the receipt of briefs and affidavits, the district court issued findings of fact and conclusions of law concerning the parties’ rights to the remaining sales proceeds. The Robertses then filed an amended motion seeking sanctions against Zapata and CNH for violating the automatic stay and the bankruptcy court’s discharge order and for failing to admit and deny discovery questions. The district court, relying on an affidavit from the Robertses’ attorney and an accompanying invoice, granted the Robertses’ motion in part, finding that as a result of CNH’s and Zapata’s violation of the automatic stay, the Robertses had incurred $25,792.25 in actual damages in the form of attorney’s fees incurred from November 16, 2010 through January 31, 2012.
II. Discussion
CNH challenges the district court’s rulings, arguing that it had a contract to purchase the farm for $113,000 and that it had established that the sale to Gittaway Ranch should be set aside. CNH also argues that the district court erred in its ruling concerning the amount of CNH’s secured claim and that the district court abused its discretion in imposing sanctions.
A. Summary Judgment Orders
We review de novo the district court’s grants of summary judgment and *904 may affirm the district court on any basis supported by the record. Hohn v. BNSF Ry. Co., 707 F.3d 995, 1000 (8th Cir.2013). “Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.” Id. (citing Fed.R.Civ.P. 56).
1) Whether CNH had a valid contract to purchase the farm
CNH argues that a contract was formed between the trustee and CNH when CNH made its $113,000 bid immediately before the close of the ten-minute bidding period. CNH, as the entity seeking to enforce the alleged contract, bears the “burden of proving there was a definite offer and an unconditional acceptance.” Marten v. Staab, 249 Neb. 299, 543 N.W.2d 436, 443 (1996) (quoting Satellite Dev. Co. v. Bernt, 229 Neb. 778, 429 N.W.2d 334, 337 (1988)). That is, CNH must demonstrate that “a valid, legally enforceable contract exists.” Id. (quoting Bernt, 429 N.W.2d at 337).
Generally speaking, there are two types of auctions that give rise to a contract for the sale of property: those without reserve, and those with reserve. Id. In an auction without reserve, the seller is the offeror and the bidder is the offeree. Id. “[T]he contract is consummated with each bid, subject only to a higher bid being received.” Id. (quoting Pitchfork Ranch Co. v. Bar TL, 615 P.2d 541, 548 (Wyo.1980)). “In this type of sale, the seller may not withdraw his property once any legitimate bid has been submitted[.]” Id. (quoting Pitchfork, 615 P.2d at 548).
The roles of the seller and bidder are reversed in an auction with reserve, with the bidder acting as the offeror and the seller as the offeree. Id. “[T]he auctioneer, as agent of the seller, invites bids (offers) with the understanding that no bargain exists until the seller has made a further manifestation of assent; the auctioneer may reject all bids and withdraw the goods from sale until he announces completion of the sale.” Id. (quoting Rosin v. First Bank of Oak Park, 126 Ill.App.3d 230, 81 Ill.Dec. 443, 466 N.E.2d 1245, 1249 (1984)). “[A]uctions are presumed to be with reserve unless they are expressly stated to be without reserve.” Id. (quoting Cuba v. Hudson & Marshall, Inc., 213 Ga.App. 639, 445 S.E.2d 386, 387 (1994)).
CNH contends that the following language on the bid sheet created an auction without reserve: “The Trustee’s Sale will remain open for ten (10) minutes and I will accept any bids offered during that time.” This language, however, does not constitute an express statement that the auction would be without reserve. Instead, the language indicates a “preliminary negotiation, not intended and not reasonably understood to be intended to affect legal relations.” Marten v. Staab, 4 Neb.App. 19, 537 N.W.2d 518, 523 (1995) (citation omitted) (explaining that seller’s statements that property “will be sold to the highest bidder” does not ordinarily transform an auction into one without reserve), aff'd, 249 Neb. 299, 543 N.W.2d 436 (1996).
CNH argues that even if the auction was with reserve, it need only show that there was an offer, an acceptance, and closure of the auction to create a valid sale under the Nebraska Trust Deeds Act. CNH contends that it has met this burden, pointing to its $113,000 bid as the offer, Frayser’s statement before the auction that he would “accept any bids offered during that time” as the acceptance, and Frayser’s announcement that the ten-minute time period had expired as the closure of the sale. The general rule is that “acceptance of a bid at auction is denoted by the fall of the hammer or by *905 any other audible or visible means signifying to the bidder that he or she is entitled to the property[.]” 7 Am.Jur.2d Auctions and Auctioneers § 31 (2013) (footnote omitted). Here, there was no fall of the hammer at the conclusion of the ten minutes. Instead, Frayser simply announced that the ten-minute time period had expired. Frayser did not make any indication that he had accepted CNH’s bid, such as saying that the property was “going, going, gone” or “sold” to CNH. Id. (footnotes omitted) (explaining that in addition to the fall of the hammer, an auctioneer’s use of these expressions may also indicate acceptance of the last bid received). CNH’s argument that Frayser’s statement that he would “accept any bids offered during that time” constitutes an acceptance of their bid is a continued attempt by CNH to treat the auction as one without reserve. When an auction is with reserve, as we conclude this one was, Frayser’s initial statement could not have been the “audible or visible means signifying to the bidder that he or she is entitled to the property[.]” Id. Accordingly, the district court properly denied CNH’s motion for summary judgment.
2) Whether CNH can set aside the sale of the farm to Gittaway Ranch
CNH argues that the district court erred by finding that CNH could not set aside the sale to Gittaway Ranch and in granting the Robertses’ motion for partial summary judgment. Relying on Gilroy v. Ryberg, 266 Neb. 617, 667 N.W.2d 544 (2003), CNH argues that the sale to Gitta-way Ranch should be set aside because the auction process was defective, causing prejudice to CNH in that Frayser’s acceptance of bids after the ten-minute period expired resulted in Zapata’s having to pay a higher price to purchase the farm. Assuming that CNH can even challenge the sale, it cannot demonstrate prejudice, for, as set forth above, its $113,000 bid did not result in a valid contract between it and the trustee.
3) Whether CNH set forth sufficient evidence to create a material question of fact concerning its attorney’s fees
CNH argues that the district court erred in granting the Robertses summary judgment on the issue whether the $7,553.57 in attorney’s fees were part of CNH’s secured claim.[2] Title 11, United States Code, Section 506(b) allows an ov-ersecured creditor to recover “any reasonable fees, costs, or charges provided for under the agreement ... under which such claim arose.” In First Western Bank & Trust v. Drewes (In re Schriock Construction, Inc.), 104 F.3d 200, 201 (8th Cir.1997), we explained that a creditor seeking to recover attorney’s fees under § 506(b) must show: “(1) that it is overse-cured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorney’s fees.”
In their motion for partial summary judgment, the Robertses included a billing statement from CNH’s attorney and, without conceding the reasonableness of the fees, argued that CNH’s attorney’s fees that arose before the Robertses defaulted or were unrelated to the trust deed’s foreclosure were not part of CNH’s secured claim. The district court found that the trust deed secured the payment of certain attorney’s fees “necessary or incidental to improvement or protection” of the farm, *906 but that CNH had failed to offer any evidence showing that its attorney’s fees satisfied this requirement or were reasonable.
CNH argues that the district court’s finding was erroneous because the district court improperly shifted to it the burden of demonstrating the necessity and reasonableness of attorney’s fees. We disagree. A party opposing a properly supported motion for summary judgment like the Robertses’ “has an affirmative burden to designate specific facts creating a triable controversy.” Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 714 (8th Cir.2004) (quoting Crossley v. Ga.-Pac. Corp., 355 F.3d 1112, 1113 (8th Cir.2004) (per curiam)). CNH’s only response to the Robertses’ motion for partial summary judgment on this issue was a short statement that CNH’s claim for attorney’s fees was a question of fact. Although CNH acknowledges that it would bear the burden at trial of showing that its attorney’s fees were reasonable and that they were necessary or incidental to the protection or improvement of the farm, it failed to offer any evidence on these issues. In these circumstances, the district court did not err in granting summary judgment in favor of the Robertses on this issue.[3] See Crotty v. Dakotacare Admin. Servs., Inc., 455 F.3d 828, 831 (8th Cir.2006) (“When a party ... has the burden of proof on an issue, it must present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion.”).
ll. Sanctions
CNH contends that the district court erred by awarding the Robertses $25,792.25 in sanctions. The Robertses’ January 22, 2010, bankruptcy filing triggered the automatic stay provisions of 11 U.S.C. § 362. Section 362(k)(l) provides that a debtor injured by a “willful” violation of the automatic stay “shall recover actual damages, including costs and attorneys’ fees[.]” To recover under § 362(k), the debtor must show that the creditor’s violation of the automatic stay was willful and that the violation injured the debtor. See Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir.1991). We review a district court’s award of sanctions for an abuse of discretion. Schwartz v. Kujawa (In re Kujawa), 270 F.3d 578, 581 (8th Cir.2001).
CNH argues that even if it violated the automatic stay, the district court abused its discretion by awarding sanctions because the Robertses did not suffer any actual damages. Specifically, CNH argues that our decision in Lovett establishes that attorney’s fees can never, by themselves, constitute independent “actual damage” under § 362(k). We do not read Lovett so broadly. In Lovett, the only evidence of damages presented was that of bringing a motion for a temporary restraining order and contempt sanctions in the bankruptcy court. 930 F.2d at 629. There was no evidence of the trustee’s costs and attorney’s fees associated with defending the property of the bankruptcy *907 estate from the alleged violation of the bankruptcy stay. Id. Here, the district court awarded the Robertses the attorney’s fees they incurred “to protect their homestead exemption from CNH and Zapata’s attempts to further encumber estate property in violation of the automatic stay.” D. Ct. Order of May 10, 2012, at 9. Had the Robertses not incurred these fees, the district court explained, “they would have lost most, if not all, of the value of their homestead exemption.” Id. This is not a situation in which the district court awarded attorney’s fees for time the Rob-ertses’ attorney spent prosecuting the March 13, 2012, motion for sanctions. Indeed, the district court specifically declined to award the Robertses attorney’s fees incurred after January 31, 2012, finding that the Robertses had failed to point “to any evidence indicating with reasonable certainty that those fees have actually been incurred or that they were incurred as a result of protecting their homestead from violations of the automatic stay or discharge injunction.” Id. at 10.
Alternatively, CNH argues that the district court abused its discretion because the fees awarded were not incurred solely in response to issues raised by CNH and because the Robertses failed to show with specificity those fees attributable to CNH’s and Zapata’s violations of the automatic stay. Our review of the entire record satisfies us that the district court, which was most familiar with this litigation and in the best position to determine the amount of actual damages, did not abuse its discretion in finding that the Robertses had incurred $25,792.25 in actual damages as a result of CNH’s and Zapata’s violation of the automatic stay. See Hutchins v. A. G. Edwards & Sons, Inc., 116 F.3d 1256, 1260 (8th Cir.1997) (“Because ‘the district courts are more familiar with proceedings before them and with the conduct of counsel than we are, ... we should give them a large measure of discretion in deciding what sanctions are appropriate for misconduct.’ ” (quoting Givens v. A.H. Robins Co. Inc., 751 F.2d 261, 263 (8th Cir.1984))); Hubbard v. Fleet Mortg. Co., 810 F.2d 778, 782 (8th Cir.1987) (per curiam) (“In contempt cases, the trial court has discretion to fashion the punishment to fit the circumstances.”).
III. Conclusion
The judgments and award of sanctions are affirmed.

. The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

. To the extent that CNH disputes the district court’s finding that CNH's inspection fees were not part of its secured claim, this argument is waived, as CNH has failed to develop it on appeal. See Cubillos v. Holder, 565 F.3d 1054, 1058 n. 7 (8th Cir.2009) (deeming an argument not developed on appeal to be waived).

. In, its brief on appeal, CNH asserts, without citation to the record, that there were affidavits in the record from Zapata and Garden establishing that the attorney's fees were reasonable and were necessary to protect the farm. Although CNH submitted affidavits from Zapata and Garden concerning attorney’s fees prior to the district court’s final determination of the parties' rights to the sales proceeds, these affidavits were not before the district court when it ruled on the Robertses’ second motion for partial summary judgment. Accordingly, we are unable to consider them. See ACLU of Minn. v. Tarek ibn Ziyad Acad., 643 F.3d 1088, 1095 (8th Cir.2011) (“Generally, we cannot consider evidence that was not contained in the record below when the district court rendered its decision.”).