# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3350
_____

Richard Scott; Tim Burney; Kevin Underwood; J'Won Wilder

*Plaintiffs - Appellants*

v.

John Baldwin, individually and in his official capacity as Director of the Iowa
Department of Corrections

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: June 10, 2013
Filed: August 6, 2013

_____

Before COLLOTON, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Four ex-inmates of the Iowa Department of Corrections sued DOC Director John R. Baldwin, individually and in his official capacity, under 42 U.S.C. § 1983. They sought monetary and injunctive relief (and class certification) for detention beyond their release dates, in violation of their constitutional rights. The plaintiffs

appeal the district court's[1] grant of qualified immunity to Baldwin on the individual-capacity damage claims.[2] Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

On July 29, 2011, the Iowa Supreme Court held that an Iowa statute requires credit for time served "for supervision or services." **Anderson v. State**, 801 N.W.2d 1, 5 (Iowa 2011). Director Baldwin participated in the *Anderson* litigation. Within weeks of the decision, he knew it would impact "approximately 3,444 offenders." According to a spokesperson, the DOC might need to release "thousands of inmates." Baldwin has the authority to apply credits and release inmates.

Working some overtime, the DOC began recalculating each affected inmate's release date. The first affected inmate was released August 26 – her recalculated release date – a rare timely release. Starting September 1 (the day procedendo issued) and continuing through December 8, the DOC released over 200 affected inmates.

The plaintiffs were detained beyond their release dates. Richard Lee Scott was released September 15 — 46 days past his recalculated release date of July 31. Timothy Fabiaun Burney was released September 19 — 43 days past his recalculated release date of August 7. Kevin Dwight Underwood was released September 22 — 55 days past the *Anderson* decision (his recalculated release date was before

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

[2]The district court dismissed the plaintiffs' suit against Baldwin, including their official-capacity § 1983 claims for injunctive relief. It denied as moot their motion for class certification. Those rulings are not challenged on appeal.

*Anderson*).  J'Won Leonard Wilder was released September 27 — 60 days past the *Anderson* decision (his recalculated release date was before *Anderson*).

Baldwin moved to dismiss the plaintiffs' suit, arguing they did not receive favorable terminations under *Heck v. Humphrey*, 512 U.S. 477 (1994), or alternatively he is entitled to qualified immunity.  The district court assumed, without deciding, *Heck* does not apply, and granted qualified immunity.

II.

This court reviews de novo the grant of a motion to dismiss on qualified immunity.  *See **Stodghill v. Wellston Sch. Dist.***, 512 F.3d 472, 476 (8th Cir. 2008).  This court accepts as true the plaintiffs' factual allegations, viewing them most favorably to the plaintiffs.  *Id.*  Baldwin must show he is "entitled to qualified immunity on the face of the complaint." ***Bradford v. Huckabee***, 394 F.3d 1012, 1015 (8th Cir. 2005).

Qualified immunity shields public officials from § 1983 damage actions if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Pearson v. Callahan***, 555 U.S. 223, 231 (2009) (citation omitted).  "'[I]n the light of pre-existing law the unlawfulness [of the official's action] must be apparent.'" ***Hope v. Pelzer***, 536 U.S. 730, 739 (2002), *quoting **Anderson v. Creighton***, 483 U.S. 635, 640 (1987).  "Qualified immunity would be defeated if an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff[s]." ***Gordon ex rel. Gordon v. Frank***, 454 F.3d 858, 862 (8th Cir. 2006) (alterations omitted) (emphasis in original) (citation and internal quotation marks omitted); *see **Sisney v. Reisch***, 674 F.3d 839, 847 (8th Cir. 2012) (explaining that officials receive qualified immunity if they lacked "fair notice" that their actions were unlawful).  "Officials are not liable for bad

guesses in gray areas; they are liable for transgressing bright lines." ***Davis v. Hall***, 375 F.3d 703, 712 (8th Cir. 2004) (citation and internal quotation marks omitted).

The plaintiffs claim that by failing "to timely recalculate the end dates of the sentences," Baldwin was deliberately indifferent to their right to release when their sentences expired. Under the Eighth and Fourteenth Amendments, the plaintiffs had a clearly established right to be "free from wrongful, prolonged incarceration." ***Id.*** at 712, 714 ("Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment." (citation and internal quotation marks omitted)). When "actual deliberation is practical," establishing a substantive-due-process violation requires proof of deliberate indifference, rather than conscience-shocking conduct. ***Terrell v. Larson***, 396 F.3d 975, 978 (8th Cir. 2005) (en banc) (citation and internal quotation marks omitted). A claim of deliberate indifference "includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk." ***Crow v. Montgomery***, 403 F.3d 598, 602 (8th Cir. 2005).

Undoubtedly, the plaintiffs were detained beyond the end of their sentences. But, although Baldwin knew *which* inmates *Anderson* affected, he did not know *when* to release them without recalculating their release dates. The plaintiffs claim he took too long, showing deliberate indifference to a duty to investigate their detentions. The issue is whether Baldwin "reasonably could have believed" the time he spent recalculating release dates was "lawful in light of clearly established law and the totality of the circumstances." *See **Good v. Olk-Long***, 71 F.3d 314, 316 (8th Cir. 1995) ("[E]ven if the constitutional violation occurs, the issue of qualified immunity turns on the more particularized concern of whether 'a reasonable official would understand that what he is doing violates that right,'" *quoting **Creighton***, 483 U.S. at 640).

-4-

The plaintiffs rely on *Davis*. There, some state DOC defendants were denied qualified immunity because they knew a court order directed immediate release, but detained the inmate another 57 days. *Davis*, 375 F.3d at 706-07, 712, 716. The *Davis* court explained that "whatever haziness obscures the exact contours of a duty to investigate burns off once the authorities *know* that they have no basis for detention." *Id.* at 716 (emphasis in original) (citations omitted).

Here, in contrast, no court order required any plaintiff's *immediate* release. The plaintiffs do not allege that anyone notified Baldwin of the plaintiffs' overdetentions, or that any plaintiff requested recalculation of his release date. *Cf. id.* at 714, *quoting* **Alexander v. Perrill**, 916 F.2d 1392, 1398 (9th Cir. 1990) ("[P]rison officials who are under a duty to investigate claims of computational errors in the calculation of prison sentences may be liable for their failure to do so *when a reasonable request is made*." (emphasis added)). They do not allege that Baldwin detained them *after* he knew their new release dates.[3] *Cf. id.* at 716 ("[S]ome of the . . . defendants were on notice that Davis was entitled to be released."). Because of the *Anderson* decision, Baldwin had a "duty to investigate" — to recalculate their release dates. *Cf.* **Dahl v. Weber**, 580 F.3d 730, 734 (8th Cir. 2009) (granting

---

[3]On appeal, the plaintiffs say, without citation to the record, "Baldwin did in fact by early September, 2011 re-calculate all relevant sentences and started trickling released prisoners out of the prison facilities." (Exhibit 8 in the addendum to the plaintiffs' brief appears to contradict this statement.) The plaintiffs did not allege this in their complaint, or raise this assertion below, as the district court noted: "Plaintiffs do not allege when, exactly, the DOC recalculated their release dates after <u>Anderson</u>, or that they were overdetained even after the DOC recalculated their release dates." This court "will not consider assertions that were not before the district court." **Crest Const. II, Inc. v. Doe**, 660 F.3d 346, 355 (8th Cir. 2011); *accord* **Garden v. Cent. Nebraska Hous. Corp.**, ___ F.3d ___, ___, 2013 WL 3214982, at *4 n.3 (8th Cir. June 27, 2013) (explaining this court is "unable to consider" a factual assertion, "without citation to the record," where the evidence is "not before the district court when it ruled").

-5-

qualified immunity because the defendant had neither the duty to investigate the inmate's detention, nor the authority to release him). But *Davis* does not address, let alone clearly establish, an amount of time for Baldwin to recalculate the plaintiffs' release dates.

The plaintiffs cite no authority that clearly required Baldwin to recalculate their release dates within a certain time. Under the circumstances, the law did not fairly warn him that the amount of time spent recalculating thousands of release dates, including the plaintiffs', recklessly disregarded their constitutional right to release. *See* **Hope**, 536 U.S. at 741 ("[T]he salient question . . . is whether the state of the law . . . gave . . . fair warning that the[] [action] was unconstitutional."); **Wilson v. City of Des Moines**, 293 F.3d 447, 450 (8th Cir. 2002) ("If the law does not [provide clear notice], and the officer reasonably (even if wrongly) believes that his conduct is reasonable under the circumstances, . . . qualified immunity is appropriate."). Because Baldwin's conduct was not clearly "unlawful in the situation he confronted," he is entitled to qualified immunity. *See* **Grayson v. Ross**, 454 F.3d 802, 810 (8th Cir. 2006). This court need not decide, therefore, if *Heck* applies. *See* **Nelson v. Cnty. of Wright**, 162 F.3d 986, 989 n.3 (8th Cir. 1998).

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____